## PEGINIS v. CITY OF ATLANTA et al.

1. Under the ruling in *Kirkland* v. *Atlantic & Birmingham Ry. Co.*, 126 *Ga.* 246 (55 S. E. 23) the assignment of error, being upon an order refusing a temporary injunction, was sufficiently specific.

2. As to a useful and per se perfectly lawful occupation, such as the keeping of a restaurant or lunch counter, the City of Atlanta has no authority to arbitrarily revoke a business license which it has granted to the proprietor thereof.

3. Jurisdiction to abate nuisances existing in the cities of this State having a population of 20,000 or more, by a summary proceeding, except as to those things which are by the common or statute law declared to be nuisances per se or which are in their very nature palpably and indisputably such, resides alone in the police court of the city where it is claimed that such nuisance exists.

4. The municipal council of Atlanta has no authority by resolution to declare a business which is useful and lawful per se to be a nuisance on account of the manner in which it is conducted, and thereupon to revoke the business license which has been granted to the proprietor.

5. The thing sought to be enjoined was not a mere past transaction, but was of such character as rendered injunction an appropriate remedy.

6. Under the pleadings and evidence the judge should have enjoined the defendants from interfering with the business of the plaintiff under pretense of authority derived from the ineffectual attempt to revoke his licenses.

*Argued November 13, 1908.—Decided March 10, 1909.*

Petition for injunction. Before Judge Ellis. Fulton superior court. June 30, 1908.

*Cam D. Dorsey* and *Dorsey, Brewster, Howell & Heyman,* for plaintiff, cited (besides authorities cited in the opinion, infra): Civil Code, §4913; *Ga. R.* 67/190; 72/428; 74/702; 96/546; 98/623, 625; 120/760.

*James L. Mayson* and *William P. Hill,* contra, cited: 1 Tied. St. & Fed. Con. 502; 93 *Ga.* 68; 76. Tex. 559; 5 Ohio, 14; 72 U. S. 462; 129 U. S. 114; 170 U. S. 189; 126. N. Y. 473; 14 La. An. 56; 133 Mass. 578; 30 So. Rep. 808; 1 Dill. Mun. Cor. §384; Tied. Pol. Pow. 287, 312; 135 U. S. 100; 101 U. S. 814; 97 U. S. 25; 128 U. S. 26; 16 Wall. 36; 152 U. S. 136; 94 U. S. 113.

ATKINSON, J. On January 3, 1908, George Peginis obtained from the City of Atlanta four separate licenses, in conformity with its ordinances, authorizing him to conduct the business of keeping a lunch-counter, operating a soda-fount, selling cigarettes, and selling cigars and tobacco, all at the same place of business in the city. He paid for each of these licenses the amount prescribed

by the ordinances. On January 20, during the term covered by such licenses, without notice to the plaintiff, the general council of the city passed, and the mayor approved, a resolution in the following words: "Whereas the business maintained at No. 79 S. Broad street by G. Peginis, dealing in the sale of cigarettes, cigars, and tobacco, soda-fount drinks, and lunches to negroes, is and has been maintained in such manner as to become a nuisance: therefore be it resolved, that the business conducted at said place by said licensee is a nuisance, and that the various licenses issued therefor be and the same are hereby revoked." Peginis filed an equitable petition to enjoin the enforcement of this ordinance and the interference with his business, alleging that he had invested a considerable amount of money therein, and that irreparable damage would be done by closing his place of business or preventing him from continuing to conduct it, by means of continuous.prosecutions or otherwise. The defendant admitted the granting of the licenses and the adoption of the resolution revoking them; but alleged that because of the manner in which the business was conducted, and on account of the crowds which were allowed to congregate in the place and along the sidewalk adjoining it, and their demeanor, it had become a nuisance, and the city claimed that it had the right and authority to revoke the licenses. On the hearing of the application for an interlocutory injunction it was refused, and the plaintiff excepted.

1. No further reference in the opinion to the ruling announced in the first headnote is necessary.

2. The powers of a municipal corporation are limited to those expressly granted or conferred by necessary implication. The collection of a business tax on occupations which are per se useful and lawful, although the method of doing so is called a license, is quite, distinct from the granting of a license, strictly so called, to conduct an occupation of an entirely different character, granted under the power of necessary police regulation and control of certain pursuits. In the former class the tax or charge is imposed for the purpose of collecting revenue; and although the mode of doing so is frequently called licensing, the real purpose is to enforce the collection of the municipal revenue. As to such occupations the municipal authorities are not vested with a discretion to grant or refuse licenses or to revoke such licenses at the will of the grantor.

If such power were conceded to the city authorities, they might refuse to allow any dry goods merchant, hardware dealer, hotel proprietor, confectioner, butcher, or baker to conduct his business, by simply refusing to issue him a business license, or might destroy his business at will, after its establishment, by revoking his license. No such arbitrary power is conferred on municipal councils or municipal authorities. Cases like that of *Whaley* v. *Columbus*, 89 *Ga.* 781 (15 S. E. 694), where a license to sell liquor was revoked, fall under the other class above mentioned, and do not stand on the same basis. So, also, cases like that of *Laing* v. *Americus*, 86 *Ga.* 756 (13 S. E. 107), where the street committee of a municipal council consented for a fish dealer to locate his fish-box in one of the public streets of the city, which they could not lawfully do, and subsequently he was required to remove the obstruction from the street, are not in point. Neither is the power of the State to prescribe and change qualifications for professional licenses relevant to the present consideration, nor the power to prescribe reasonable police regulations in regard to businesses of a certain character. Therefore the effort to revoke the licenses of the plaintiff, under a claim of discretionary power to revoke all licenses, was without authority of law and unavailing. What has been already said, based on general principles, is made more clear in regard to the City of Atlanta by an examination of the provisions of its charter. (Acts 1874, pp. 116, 122, Code of Atlanta, sec. 64 et seq.) They show on their face a clear line of demarkation between taxes imposed on ordinary useful occupations which are lawful per se, although the mode of collection is termed granting a license, and other occupations of a different character. Thus, as to the sale of ardent spirits (prior to the recent prohibition act), the charter of Atlanta provided that the mayor and general council should have the power and authority to regulate the retailing of such liquors within the corporate limits, "and, at their discretion, to issue license to retail or to withhold the same, and to fix the price to be paid for license at any sum they may think proper, not exceeding two thousand dollars; and they shall have power and authority to pass and enforce ordinances providing for the punishment of persons selling spirituous, malt, or other intoxicating liquors at wholesale or retail within the corporate limits of said city without having obtained licenses from said mayor and

general council, or for selling such liquors after the expiration or revocation of such licenses." No contention was made of any distinction between the selling of cigarettes, the operation of a lunch-counter, or the other kinds of business for which the plaintiff held licenses; but the claim of power on the part of the municipal council to revoke was made as to all of them. Section 15 of the Political Code has references to licenses issued in the exercise of the police power. It was codified from cases arising in regard to licenses to sell spirituous liquors. On the general subject see 66 Cent. L. Jour. 314; Freund on Police Power, §59; Dill. Mun. Corp. (4th ed.) 145, §89. See *Mayor of Savannah* v. *Cooper*, 131 *Ga.* 670 (63 S. E. 138) ; *Home Ins. Co.* v. *Augusta*, 50 *Ga.* 530; Id. 93 U. S. 116 (23 L. ed. 825).

3, 4. Having thus determined that the municipal council had no arbitrary power to revoke the licenses of the plaintiff, had they the power ex parte to declare his business to be a nuisance on account of the manner in which it was conducted, and therefore to revoke the license? It would seem that no discussion should be necessary to answer this question in the negative. To condemn without an opportunity for a hearing is not in accordance with the spirit of the law. But there is also another cogent reason in the present case why this could not be done, namely, that the municipal council had no authority to make any such adjudication. In *Western & Atlantic R. Co.* v. *Atlanta*, 113 *Ga.* 537 (38 S. E. 996, 54 L. R. A. 294), it was said: "Save and except as to those things which are by the common or statute law declared to be nuisances per se, or which are in their very nature palpably and indisputably such, neither the municipal authorities of any city of this State, nor any department thereof which has been given the power to abate nuisances, has the legal right summarily to compel the abatement of a particular thing or act as a nuisance, without reasonable notice, to the person alleged to be maintaining or doing the same, of the time and place for hearing and determining whether such thing or act does in law constitute a nuisance. Jurisdiction to abate nuisances existing in the cities of this State having a population of 20,000 or more, in a summary manner, except as to things or acts of the nature first above indicated, resides alone in the police court of the city where it is claimed such nuisance exists." See also Civil Code, §§4760-4763.

5. On behalf of the defendant in error it was contended that "council had already revoked the license before this petition was filed, and therefore there is nothing for the superior court or the Supreme Court to decide." The municipal council had made an effort to revoke the license of the plaintiff; but we have already seen that for lack of authority it was ineffectual. It is evident from the pleadings and evidence introduced that the city authorities were proceeding to prevent the plaintiff from conducting business under the licenses which had been granted to him. The attempted revocation of those licenses was one step in that direction. There was testimony to show that the city's license inspector demanded and took from the plaintiff his license to operate a lunch-counter; and that the city through its agent notified him that his place of business would be closed in conformity with the resolution of council, that it was the purpose of the license inspector to close it at a stated time, and that the plaintiff would not be allowed thereafter to conduct business at that place. While the city has not admitted this in terms, it is evident from the defendant's own pleading and conduct that the purpose was, not merely to revoke the license and stop, but to close the business of the plaintiff on account of the manner in which the resolution declared he was conducting it. In its answer the city contended that it had the power to revoke the license, alleged that the place had been so conducted as to constitute a nuisance and to be a source of annoyance to the public and the adjoining businesses, and that on account of the continued nuisance and offensive character of it the council did revoke the license; and in its answer by way of cross-petition it prayed that the plaintiff be enjoined from further continuing the business alleged at the place named. No express ruling was made on this prayer, and no cross-bill of exceptions filed. But reference is made to it along with other circumstances to show clearly that at the time when the plaintiff filed his petition it was not a mere past transaction, but that the desire of the city was to stop him from conducting his business.

6. The presiding judge should have granted an injunction restraining the defendants from stopping the conduct of the plaintiff's business or interfering therewith under or by virtue of the attempted revocation of his license.

*Judgment reversed. All the Justices concur.*