## EISFELDT *v* CITY OF ATLANTA *et al.*

1. The business ot keeping a rooming-house is one so far affecting the public health, morals, or welfare that it is competent for municipal authorities to require persons conducting such a business to obtain a license, where the legislature in the exercise of the police power has conferred upon the municipality the necessary authority to pass ordinances upon this question.

2. The evidence objected to in this case tended to illustrate material issues involved, and the court did not err in overruling the objections.

3. There was no abuse of discretion in refusing an injunction.

No. 780. FEBRUARY 24, 1919.

Petition for injunction. Before Judge Pendleton. Fulton superior court. December 15, 1917.

*J. H. Leavitt, Richard B. Russell,* and *Holbrook & Corbett,* for plaintiff.

*J. L. Mayson* and *S. D. Hewlett,* for defendants.

BECK, P. J. Mrs. Julia Eisfeldt filed her petition against the City of Atlanta and the chief of police of that city, alleging as follows: She is a resident, and conducts a rooming-house located at 135 Ivy street in that city. She holds the premises thus designated under a lease for a term of years, and pays an annual rental of $1380. She has spent a large sum in putting the premises in habitable condition and in furnishing the house, her savings for many years being invested therein; and she is unable to make a livelihood by any other business. She made application to the mayor and council of the city for a permit to conduct a rooming-house, which was referred to the police committee. Under ordinances of the city it is the duty of that committee to meet in the city hall on Thursday immediately before the regular meeting of the council, for the purpose of passing on such applications as are referred to it. On Thursday, September 13, 1917, the day upon which it was to meet, according to the ordinances of the city, the committee did not meet, and, although petitioner's attorney was present in the city hall and in the room where said committee was to meet, she was not given an opportunity to present her application in person, or for a hearing in her behalf by said committee. At the regular meeting of the city council on September 17, 1917, J. Lee Barnes, chairman of the police committee, stated in open meeting of the council that the committee did not meet as required by law; and each member of the committee signed an adverse

report on petitioner's application during the session of the said council on that date, and she was denied a permit to conduct the rooming-house. At the time of making the application she tendered to the city clerk $25, the fee for a license to conduct a rooming-house; but it was refused. On September 18, 1917, she again made application for a permit to conduct a rooming-house at 135 Ivy street, and again tendered to the city clerk $25, the license fee required, and it was refused. She makes a continuous tender of the fee; she is willing at all times to comply with the laws and ordinances of the City of Atlanta, and is now ready to pay the license fee required by the city for permission to conduct the rooming-house. On August 13, 1917, she was served with a summons to appear in the recorder's court in the City of Atlanta on the next day, to answer the charge of keeping and maintaining a rooming-house without a permit. At that time her application was pending before the city council; and on September 5, 1917, when the case came on to be heard, the charge against her was dismissed. From time to time the members of the police department have invaded her home and premises at 135 Ivy street, without a warrant and without any reasonable cause therefor, and the chief of police is continually threatening to arrest her for conducting the rooming-house. To deny her the right to conduct the rooming-house would cause her great and irreparable damage and loss of money she has invested; and unless the acts and conduct of the defendants be restrained, they will deprive her of her property without due process of law, and deny to her the equal protection of the laws. Waiving discovery, she prays that the city and the chief of police, as well as their subordinates, be enjoined and restrained from interfering with or disturbing her in the peaceful maintenance of the rooming-house, and from going in or about said premises without a warrant issued according to law, and for general relief. When the case came on for a hearing the trial court refused the injunction.

1. We are of the opinion that the court did not err in refusing to grant the injunction in this case. Evidence was introduced tending to show that the rooming-house conducted by the plaintiff was of a disorderly character, and that she maintained it for immoral purposes. Numerous affidavits were introduced by her, tending to show that the house conducted by her was not a disor-

derly house, and that it was not conducted in such a way as to violate the law. The evidence made an issue of fact, and therefore an issue for determination by the court hearing the case, who determined it adversely to the plaintiff.

It is cogently urged in the brief of counsel for the plaintiff that operating a rooming-house is a useful, and per se 'a perfectly lawful, occupation and business; and that the City of Atlanta has no discretion as to granting or refusing licenses to operate a useful and per se lawful business. Among other cases cited to support this position is that of *Peginis* v. *Atlanta,* 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716). The question of revoking a license which had been granted the proprietor of a restaurant was involved in the *Peginis* case, and upon other facts it differs from the branch of the instant case now under consideration. Substantially the same question as that here involved was decided in *Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), thus: "The business of keeping a hotel, lodging-house, or rooming-house is one so far affecting the public health, morals, or welfare that it is competent for the legislature, in the exercise of the police power, to authorize municipal authorities to require persons conducting such a business to obtain a license." The full discussion in the *Cutsinger* case of the question involved renders further discussion here unnecessary.

It is also argued in the brief that no ordinance requiring one to obtain a license to maintain a rooming-house was introduced in evidence, and that for this reason the court erred in deciding adversely to the plaintiff. We do not think there is any merit in this contention. It is true that neither the ordinance nor a duly certified copy thereof was introduced in evidence; and usually, in order to show the existence of an ordinance, it is necessary that there should be proof of the same. This rule should not be applied with strictness in this court, because, both under the pleadings and the evidence of the plaintiff, while it is not distinctly stated that there was an ordinance requiring one to obtain a license for the purpose of conducting a rooming-house, the existence of the ordinance is distinctly recognized in the plaintiff's petition and in certain parts of the evidence introduced by her, and the existence of the ordinance was not contested on the trial. It is recognized in the petition itself, though not plainly alleged to

exist; for the petitioner does show that she made application to the mayor and council of the city for a permit to conduct a rooming-house "and that the said permit was, in the ordinary course, referred to a committee of council, known as the police committee." Again, it is alleged in the petition that "under the ordinances of the City of Atlanta, it is the duty of the said police committee to meet in the city hall on the Thursday immediately before the regular meeting of council, for the purpose of passing on such applications as are referred to it." And in more than one place it is alleged that petitioner "tendered to the city clerk of the City of Atlanta the sum of $25, the fee for a license to conduct such rooming-house." It is nowhere in the petition alleged that no such license is required by ordinance, nor that the ordinance requiring the fee is invalid.

We are further of the opinion that the evidence does not show that the ordinance in regard to licenses which are to be secured by those seeking to engage in the business of conducting rooming-houses is being administered in an arbitrary manner. The application for the license in question is referred to a committee in due course, as appears from the petition itself; and in the present case the chairman of the police committee, in his affidavit, denies that he had stated that his committee did not meet according to law. If as a matter of fact the committee and the chairman of the committee acted in an arbitrary manner in regard to the application of this petitioner, steps should have been taken to compel the committee to give the applicant an opportunity of making a showing, if any question should arise as to her being a suitable person to obtain such permit; but she could not, because of the failure of the committee, in the particular instance alleged, to have a meeting and grant her a permit, operate a rooming-house, for which an ordinance required her to obtain a license, without becoming subject to the penalties imposed by the ordinance.

2. Error is assigned upon certain rulings in admitting, over objection, evidence tending to illustrate the issue as to whether or not the permit to run the rooming-house should have been granted upon the application of the petitioner; but we are of the opinion that this evidence was properly admitted.

*Judgment affirmed. All the Justices concur.*