### BROWN v. CITY OF THOMASVILLE et al.

1. The decision in this case is controlled by the ruling in the case of *Peginis* v. *City of Atlanta*, 132 *Ga.* 302, 303, 304 (63 S. E. 857, 35 L. R. A. (N. S.) 716). While as a general rule equity will not restrain by injunction a threatened prosecution for a violation of a municipal ordinance, there is an exception to this general rule, which is well recognized, to the effect that where the prosecution is apparently instituted or carried on for the purpose of destroying one's property or business, or for the purpose of preventing the exercise of a business which in and of itself is perfectly lawful, equity will enjoin a criminal prosecution. The fact that one may violate any law of the State will not of itself confer upon a municipality authority to refuse or revoke a license to carry on a business which in itself is perfectly lawful, even though the licensee may be or become guilty of creating a nuisance at his place of business; since a nuisance may be abated by a proceeding brought for that purpose.

2. " As to a useful and per se perfectly lawful occupation " such as the keeping of a drug-store, soda-fount, and the sale of tobacco, cigars, and cigarettes, the municipal authorities of the City of Thomasville " are not vested with a discretion to grant or refuse licenses or to revoke such licenses at the will of the grantor. If such power were conceded to the city authorities, they might refuse to allow any dry-goods merchant, hardware dealer, hotel proprietor, confectioner, butcher, or baker to conduct his business, by simply refusing to issue him a business license, or might destroy his business at will, after its establishment, by revoking his license. No such arbitrary power is conferred on municipal councils or municipal authorities."

No. 3425.  SEPTEMBER 7, 1923.

Petition for injunction. Before Judge W. E. Thomas. Thomas superior court. August 22, 1922.

Mrs. Ida Brown filed her petition against the mayor, general council, and city marshal of Thomasville, alleging, in substance, that she is a resident of said city and is engaged in the retail drug business under the name and style of City Drug Store. She has heretofore enjoyed a good trade, and her business has been profitable. Her place of business is located at the southwest corner of Jackson and Madison streets, in said city, and in connection with her drug business she operates a soda-fount and deals in cigars, tobacco, and cigarettes. There is in said city a special license ordinance which requires all persons dealing in drugs, including druggists' sundries, seeds, cigars, tobacco, chewing-gum and candies, to pay an annual license or occupation tax of $25. The same ordinance imposes upon persons operating soda fountains an annual occupation tax of $12.50, and on all dealers in cigarettes a like tax of $12.50. Within the month of March, 1922, which is within the time allowed by a valid ordinance of said city for the application and procuring of said licenses, petitioner made application to the mayor and council of said city for a license to conduct and carry on a drug business, and to operate a soda-fount, and to deal in cigarettes, at her place of business, and paid to the treasurer of said city the sum of $50 to cover the tax required. No action was taken on her application, and no license was issued to her; but she was permitted to carry on her business without molestation until July 10, 1922, when, at the regular meeting of the mayor and council, her application was taken up for final consideration, and they then and there arbitrarily and capriciously denied the same, and refused to issue or permit the city clerk

to issue to petitioner the license for which she had applied. On the next day the marshal, acting under instructions from the mayor and council, notified the petitioner of the action taken by them, and that she would be no longer permitted to conduct her business in said city. However the city did not then refund nor has it since refunded the amount paid to the treasurer for the license applied for. Although petitioner had complied with all of the ordinances, rules, and regulations of the city with respect to obtaining a business license, and the city had received and retained the tax so paid by her, the mayor and council, on July 24, 1922, after having denied her application and refused to issue her a license, caused a case to be docketed against her in the police court for doing business without a license, and on said date she was summoned before the police court of said city to answer the charge aforesaid. The case, having been continued from time to time, came on for trial before the mayor of the city, presiding in said court, on August 7, 1922, at which time she was adjudged guilty of the offense charged, and was sentenced to pay a fine of $75, or serve —— days on the streets, all contrary to and without authority of law. Petitioner attaches a copy of the ordinance for the alleged violation of which she was tried and convicted, as follows: " Persons about to engage in any of the occupations specified in specific license and rental list shall first procure from the mayor and aldermen a license, and application for license must specify the character of business for which said license is sought, and such other information as will enable the mayor and aldermen to understand the nature of the business and where it is to be carried on. And any person doing a business within the city limits, for which a license is required by the ordinances of the city, who shall fail or refuse to take out a license for such business, shall be guilty of doing business without a license, and, upon conviction thereof before the mayor or acting mayor, shall be fined not less than one nor more than fifty dollars for each day he or they may have carried on such business, or punished as prescribed in section 1 of the general penal ordinance in the discretion of the mayor or acting mayor presiding at the trial of such case."

Petitioner shows that although the refusal of the mayor and council to grant or permit to be issued to her a business license was illegal, the defendants have threatened, and in fact intend, to

prosecute her in the police court of said city and punish her for each day that she carries on such business, and it is their intention and purpose, by constant, repeated, and malicious prosecutions, or otherwise, to close or force her to close her store and discontinue the business in which she is engaged. In pursuance of such purpose and intention, the defendants have caused to be docketed against another charge of doing business without a license, and she has been summoned before said police court to answer the same. She avers that her occupation is a useful and per se a perfectly lawful one, and that neither the mayor and council of said city nor the other defendants herein have any power or authority to prevent her from continuing her business which is in every sense a legitimate one. The unwarranted prosecutions have already greatly injured and damaged her, in that by the unpleasant and injurious notoriety given her business her customers have been driven away and her sales greatly reduced. If the defendants are permitted to hereafter prefer charges of doing business without a license against her from day to day and from time to time, she will not only be forced to incur large expense in the defense of such cases, which she is not financially able to bear, but she and her business will be exposed to public contempt and ridicule, and she will not be able to continue said business except at a great loss. The acts and conduct of the defendants herein complained of are willful and malicious, and it is their intention and purpose to destroy petitioner's business by harassing and annoying her with prosecution after prosecution in the police court until she is forced to discontinue her business. She has invested in her stock of merchandise and fixtures in her store approximately $12,000; and her said business being an established one, its good will is an asset of great value to her. Unless she is afforded adequate protection in the premises, by injunction or otherwise, her business will be broken up and destroyed, and she will suffer great and irreparable loss and injury. Her stock of goods cannot be disposed of for anything like their true value, except at retail in the usual course of business; and in the event she is forced out of business the fixtures which are adequate and suitable for her purposes will have little, if any, market value, and will be practically a total loss. Notwithstanding the mayor and council have refused to grant to her a license, they have granted to other

persons, firms, and corporations licenses to carry on the same business in which she is engaged. " She alleges that the defendants have no power or authority to discriminate against her and to deny to her the same right and privilege, and that the acts and conduct of the said mayor and council in refusing to grant her a business license and in preventing or attempting in the manner herein alleged to prevent her from pursuing a lawful occupation, are not only illegal, but are arbitrary, unreasonable, oppressive, and discriminatory, and unless enjoined will result in the confiscation or destruction of her business and property." She prays that the defendants be restrained and enjoined from interfering in any way with her in the conduct of her business, and from attempting to close her store, and be perpetually restrained and enjoined from the commission of each and all of the acts complained of in the petition; and for such other and further relief as may be deemed meet and proper.

In their answer the defendants deny that they "arbitrarily and capriciously denied" the application of the plaintiff for a license. They admit that the marshal of the city notified the plaintiff that she would no longer be permitted to conduct business in the city without a license. They deny that they did not refund the amount paid to the treasurer of the city by the plaintiff; and say that the city's voucher or check was promptly mailed to the plaintiff for the amount paid to the treasurer, and has never been returned, that if the plaintiff has failed to cash the same it has been by her choice, and that the voucher or check was good and would have been paid by the treasurer of the city at any time upon presentation. They deny that the plaintiff was summoned before the police court on August 14, 1922, for doing business without a license. They further set up the following: The drug-store operated by the plaintiff now has, and for many years has had, the reputation in the city of being conducted as a blind tiger and a nuisance; and while the defendants were aware of this fact, as the governing body of Thomasville they did not feel disposed to withold a license without more definite knowledge of the truth of this general reputation. On January 22, 1922, the prohibition officer of Thomas County, together with the sheriff, raided the drug-store at that time owned and operated by the plaintiff, and as a result of a search discovered in said store seven gallons of whisky, five gallons

of which was contained in a jug and the remainder in quart bottles; and a case was made against O. K. Brown, the husband of the plaintiff, who as her agent was conducting her business. The facts disclosed by the raid confirmed in the minds of the defendants the general reputation which the store had borne; and when the plaintiff applied for a license the defendants took no action, in order that the case which had been docketed against her husband, who operated her store, might be tried and a judicial determination had of the case against him in the city court of Thomasville. From time to time this case was continued, and has not yet been tried. At a regular meeting of the mayor and council of the city on July 10, 1922, that body duly considered the application of the plaintiff for a license; and in the exercise of their duties with reference to the general welfare, peace, good order, and morals of the city, and in the light of the general bad reputation of the plaintiff's place of business, and of the disclosures made by the raid thereon, they refused to grant to the plaintiff a license to continue to conduct business at said place and in said manner. Their refusal was not capricious nor was it arbitrary nor malicious. Had the plaintiff carried on an orderly business, there would have been no opposition to the grant of a license to her; but the defendants regarded the entire enterprise conducted by her as being a cloak for the constant, continued, and wilful violation of the laws of the city, the State, and United States, and therefore the entire business so conducted was unlawful and a nuisance, and was a constant threat to the peace, good order, sobriety, morals, and health of the community; and the defendants in refusing the license were actuated solely by their sense of duty to the citizens of Thomasville. The charge that they intend to prosecute the plaintiff in the police court for each day that she carries on said business, and that it is their intention and purpose, by constant, repeated, and malicious prosecutions, or otherwise, to force her to close her store, is false; but they do purpose, so far as they legally can, to withhold authority to conduct said business, and intend to prevent the conduct of the same, because the business is unlawful and a threat to the peace and general welfare and good morals of the community.

The plaintiff filed an affidavit in which she substantiated the allegations of her petition. That part of the affidavit which relates

to the alleged keeping and sale of whisky is as follows: Her said drug-store has been conducted in a legal and orderly manner; and if any whisky or other intoxicant has been sold at her store, she has no knowledge of it. If the prohibition officer and the sheriff found in her store, on the occasion of the raid made by them, seven gallons of whisky, as alleged in the defendants' answer, said whisky was there without her knowledge or consent. She does not now stay nor has she ever stayed at the store regularly, but has only visited the store at irregular intervals. At the time of the raid she had in her employment three men who purchased all merchandise and made all sales. She is not now engaged nor does she intend to engage in the sale and handling of whisky, in violation of law, at her place of business, or at any other place; and she denies the right of the mayor and council to deny her a license on any such pretext. If her business has gained the reputation in the city of being conducted as a blind tiger and a nuisance, such reputation is due to no fault of hers, and is attributable in a large measure to the action of the mayor and council in refusing to grant her a license, and to the unpleasant notoriety caused by the charges made against her by them or under their direction.

It was agreed between counsel for plaintiff and the defendants that six firms in the city of Thomasville were doing a drug business under licenses granted by the mayor and council. The defendants introduced in evidence the affidavits of the sheriff and county policeman, to the effect that they raided the place of business of the plaintiff on January 22, 1922, and found seven gallons of whisky; that the husband of the plaintiff was in charge of the business; that the building occupied by the plaintiff's store is so arranged with different entrances and apartments that whisky stored therein can be disposed of before officers can get to the same; that about half way up the stairs there is a scuttle-hole in the side of the wall and in this hole was found the five-gallon jug of whisky; that several bottles of whisky were found in the drawers of the desk of O. K. Brown, the husband and agent of the plaintiff in charge of the drug-store, and some around the desk in various places; that the general reputation of the place is very bad; and that the citizens of Thomasville were frequently complaining about the way the place of business was kept, and that

the same was a nuisance. Several affidavits tended to show that the place of business of the plaintiff had a very bad reputation as a place where whisky was kept and sold. In the affidavits of the mayor and councilmen they substantiate the allegations of their answer, and "most earnestly deny that their conduct with reference to the plaintiff has been actuated in the remotest degree by any personal animosity towards the plaintiff, but in refusing a license to the City Drug Store affiants were actuated solely by the desire to do their duty as the governing body of Thomasville in conserving, as best they might, the best interests of the city at large." In rebuttal the plaintiff introduced in evidence the affidavits of eleven citizens, who deposed that they had been in the drug-store of the plaintiff many times (some of the deponents had places of business adjoining and around the plaintiff's) ; and that, so far as they had been able to observe, the said business had been conducted in an orderly way.

The trial judge passed an order denying the injunction, and the plaintiff excepted.

*E. K. Wilcox,* for plaintiff.

*J. M. Austin* and *Branch & Snow,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.)

1. The first question raised by the brief and argument of counsel is whether the plaintiff should have proceeded to protect her rights by petition for mandamus rather than by injunction. It is well settled that as a general rule a court of equity will not restrain by injunction a threatened prosecution for a violation of a municipal penal ordinance, nor in a proceeding for such injunction will it inquire into the validity of the ordinance. *Jones* v. *Carlton,* 146 *Ga.* 1 (90 S. E. 278), *Steinberg* v. *Savannah,* 149 *Ga.* 69 (99 S. E. 36). However, there is an exception to this general rule, which is well recognized, to the effect that in cases where a threatened prosecution is apparently instituted and carried on for the purpose of unlawfully destroying one's property or business, or for the purpose of preventing the exercise of a business useful and lawful in and of itself, equity will enjoin a criminal prosecution. *Peginis* v. *Atlanta,* 132 *Ga.* 302 (supra), and cit. Of course as to particular cases the distinction between taxes imposed in the exercise of the police power and an occupation tax for revenue is always to be considered and borne in mind.

In the present case it seems plain that the taxes of $25 for conducting a drug-store, $12.50 for operating a soda-fount, and $12.50 for dealing in cigarettes, are mere occupation taxes imposed solely for the purpose of raising revenue for the City of Thomasville. For this reason the ruling in the *Peginis* case, supra, applies in the instant case: "As to such occupations the municipal authorities are not vested with a discretion to grant or refuse licenses or to revoke such licenses at the will of the grantor. If such power were conceded to the city authorities, they might refuse to allow any dry-goods merchant, hardware dealer, hotel proprietor, confectioner, butcher, or baker to conduct his business, by simply refusing to issue him a business license, or might destroy his business at will, after its establishment, by revoking his license. No such arbitrary power is conferred on municipal councils or municipal authorities." In the case before us it is alleged that the injunction is necessary, not only to prevent continued prosecutions, but to prevent the municipal authorities from closing the plaintiff's store and destroying her business. In the fifteenth paragraph of the answer of the defendants, while denying that it is their intention to prosecute the plaintiff for each day that she carries on her business or that it is their purpose to force her to close her store, they admit that it is their intention and purpose to withhold from the plaintiff authority to further conduct the business in which she is engaged, and to prevent her from carrying it on any longer, because, as they insist, the business has previously been carried on in an unlawful manner. This admission, considered in connection with the notice given her by the city marshal, together with the fact that she had been prosecuted in the police court, clearly shows that it was the purpose of the mayor and council to force her out of business. In view of the facts as admitted and disclosed in the present record, we are of the opinion that injunction was the appropriate remedy; for, as said in *Mayor &c. of Shellman* v. *Saxon*, 134 *Ga.* 29 (67 S. E. 438, 27 L. R. A. (N. S.) 452), "In some cases, involving special facts, injunction may be granted against the unlawful enforcement of municipal ordinances, although they are penal in character, for the protection of property or property rights or franchises against irreparable injury; as, for instance, where, under the guise of enforcing a penal ordinance, it is manifest that prosecutions and arrests are

threatened for the sole purpose of unlawfully taking or destroying property or preventing the exercise of a franchise granted by the State." See also *Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (4) (83 S. E. 263, L. R. A. 1915D, 1097, Ann. Cas. 1916C, 280); *City of Albany* v. *Newark Shoe Stores Co.,* 152 *Ga.* 557 (110 S. E. 283); *Baldwin* v. *Atlanta,* 147 *Ga.* 28 (92 S. E. 630); *Hewin* v. *Atlanta,* 121 *Ga.* 723 (49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296), and cit. According to the undisputed evidence of the plaintiff in this case, her stock of goods could not be disposed of for anything like their real value, except at retail and in the usual course of business; if her business is broken up, her store fixtures would have but little, if any, market value. From this it appears that the injury that would result to her would be irreparable.

2. Conceding that a petition for injunction was the plaintiff's proper method for seeking an adjudication of her rights, the question which must arise is whether the trial judge erred in refusing a permanent injunction. From a view of the evidence as a whole it seems clear that the council delayed granting the license after the receipt of the fees required ($50 in all) until there could be a trial of the plaintiff's husband upon a charge preferred against him in the city court of Thomasville for the offense of violating the prohibition law; and it is inferable that their final determination as to the formal grant of a license would have been largely dependent upon the result of that trial. For some reason (which we must presume was sufficient and legal) the case pending against plaintiff's husband was continued by the judge presiding in the city court of Thomasville, and as a consequence the application for a license on the part of the plaintiff was refused; the notice was given by the city marshal that she could no longer carry on a drug-store or sell soda-water or cigarettes, and upon her disregard of this notice a municipal prosecution was inaugurated, upon which she was convicted. In our opinion these facts tend to show that the refusal to grant the license was arbitrary.

A wide distinction exists between the facts of this case and the case of *Eisfeldt* v. *City of Atlanta,* 148 *Ga.* 828 (98 S. E. 495), where the application was for a permit or license to conduct a rooming-house. Unlike drug-stores, or places that sell soda-water and cigarettes, the State law recognizes that there may be disorderly rooming-houses, and rooming-houses kept for purposes of

lewdness, as well as lawful rooming-houses;. and the City of Atlanta, by express legislative authority, has been given extreme latitude in the exercise of an unlimited discretion, which is referred to in the *Eisfeldt* case, in the grant or refusal of permits to conduct rooming-houses within that municipality. It does not appear that the City of Thomasville has been clothed with similar powers in this regard. On the contrary, it appears from section 11 of the act incorporating the City of Thomasville (Acts 1889, p. 858) that " All of said taxes [except ad valorem, etc.] shall be in the nature of a license." For this reason we think that the case at bar stands upon the general principle that a lawful business which per se is useful and recognized as being a fit object for taxation for the purpose of raising revenue cannot be discriminated .against and the owner thereof. refused the right to do business capriciously or arbitrarily; and we are further of the opinion that the refusal to grant one a license to engage in a useful and lawful business after payment of the license fees required by law has been tendered, merely upon the ground that a law has been violated at his place of business, must be deemed to be both capricious and arbitrary; and when it appears that the result of such arbitrary action will impose irreparable loss upon the owner of the property, who files a proper petition for relief against prosecutions for doing business without a license although payment of the license fee has been tendered, an injunction should be granted. The case would be different were the license imposed solely for the purpose of police regulation. But it is plain in this case that the license fees prescribed are imposed solely for the purpose of raising revenue. This being the case, if any penal law of the State has been violated, it must be presumed that the arm of the law is long enough and strong enough to punish the offender, whomever he may be, and the penalty inflicted must be that provided by law, either State or municipal; but refusal to grant a license to conduct a legitimate business is not included among the penalties prescribed by law.

*Judgment reversed.    All the Justices concur.*