RICHARDSON, clerk, *v.* COKER.

No. 12631. MAY 9, 1939.

. *J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for plaintiff in error.

.*George G. Finch* and *W. W. Aycock,* contra.

*Hooper & Hooper* and *J. D. Flemister,* for persons at interest. .

REID, Chief Justice. This is not the same case as *Coker* v. *Atlanta,* 186 *Ga.* 473 (198 S. E. 74), but it is akin to it. In that case Coker sought to enjoin the city and its officers from prosecuting him for carrying on the business of an electrical contractor without a license, on the ground that the city would not issue him a license unless he would stand an examination, and that the ordinance requiring the examination was void for a number of assigned reasons. This court held that it was not necessary to pass upon the validity of the ordinance, as the petition did not disclose any reason why the plaintiff did not have an adequate remedy at law. In the

course of the opinion Mr. Justice Jenkins, speaking for the court, suggested mandamus as one of the adequate legal remedies open to the plaintiff. Coker thereupon filed a mandamus proceeding against Richardson, the clerk of the City of Atlanta, to compel him to issue him a license. He alleged an application for the license, a tender of the prescribed license fee, and a refusal by the clerk to issue the license because he did not present a certificate from the superintendent of electrical affairs. He also alleged that he had had twenty years practical experience as an electrician. He attacked so much of the ordinance as required electrical contractors to present the certificate from the superintendent of electrical affairs, and required as a prerequisite to the issuance of that certificate that the applicant should stand an examination before an electrical examining board "for the purpose of determining whether he may be reasonably expected to satisfactorily complete any contracts that he enters into with citizens of Atlanta." He attacked the ordinance as violative of art. 1, sec. 1, par. 1, of the State constitution and the due-process clause of the constitution of the United States, and as arbitrary and discriminatory. He alleged that the ordinance is void and unreasonable, because the city adequately protects its citizens against improper or dangerous electrical installation, by a system of inspections made by city officials of all such work. He alleged that the ordinance is not for the protection of the public, but is for the purpose of reducing competition in the electric trade; that it imposes unreasonable restrictions; and that it is contrary to public policy. It is not necessary to state here all the details given in support of these allegations.

The defendant answered, setting up the ordinance, denying that it was unreasonable or unconstitutional, and alleging that it was enacted under the police powers of the city "for the safety and protection of the property and life of its citizens, and to provide a method whereby electrical contractors holding themselves out to work for the public shall be those who are skilled and capable and persons on whom the public may rely in doing safe work." By an amendment to its answer it set up that in the case of *Coker* v. *Atlanta,* to which reference has been made above, the judge had held the ordinance constitutional, that on appeal to the Supreme Court that judgment was affirmed, and that it was established as "the law of the case" that the ordinance is constitutional. The de-

**172**

fendant filed also a demurrer, one of the grounds of which is that the plaintiff seeks relief under an ordinance which he attacks as invalid. The record does not show that the demurrer was passed on; and the bill of exceptions recites that the case was submitted to the judge upon the facts alleged in the petition and answer.

To an understanding of the decision it is necessary to state somewhat of the substance of the ordinance. It defines the term electrical contractor as "any person, firm, or corporation engaging in electrical installation, construction, and repair work." It requires every person desiring to engage in the business of electrical construction and installing of wiring of electrical apparatus to obtain a license and pay an annual license fee of $75. It also requires, as a prerequisite to the issuance of the license, that the applicant present an electrical contractor's certificate from the superintendent of electrical affairs. Penalties are provided for doing electrical work without a license. An electrical examining board is provided for, and it is provided that when an application is made for a license it shall be the duty of this board "to pass upon the ability of such applicant for the purpose of determining whether he may be reasonably expected to satisfactorily complete any contracts he may enter into with citizens of Atlanta." An examination fee of $10 is required of the applicant. Examinations are held twice a year, with provision for emergency examinations. Provision is made whereby the board may adopt application blanks. No provision is made as to the nature and extent of the examinations, except as stated above; but it is provided that applicant shall make a "grade of 70%" before the superintendent shall issue him a certificate. It is provided that "appeal may be made from the report of the Electrical Examining Board to the Electric Light Committee, and the order of that committee shall be final in the matter." Section 28 provides that "electrical contractors' certificates may be issued to individuals, firms, or corporations, when the person in charge of electric work for said person, firm, or corporation shall have passed the electrical contractors' examination." Section 29 provides: "Each person holding an electrical contractor's certificate shall register with the Superintendent of Electrical Affairs the person, firm, or corporation with whom he is connected, and shall not be employed by more than one person, firm, or corporation at the same time." Section 30 provides that if a person holding an

electrical contractor's certificate, upon which a license has been issued severs his connection with the contracting firm to which the license was issued, he shall immediately notify the superintendent, and such contractor shall within ten days employ some one else having a certificate or stand the examination.

Under other provisions of the ordinance, the superintendent of electrical affairs is elected by the people every four years, and has the duty of inspecting or of causing to be inspected all electrical construction or installation of every character whatever, and to control the nature of the same whenever "in his judgment life or property will better be protected thereby." No electrical materials, devices, or appliances shall be sold, used, or installed in the city unless they are of the standard set in the ordinance; and no certificate of inspection shall be issued unless the work comes up to the required standards. Before any work begins, a layout or blue-print must be submitted to the superintendent of electrical affairs. Inspections are provided for, and upon the completion of the work the superintendent of electrical affairs shall inspect it again; and if it does not conform to the standards set, it shall be disapproved and removed or done over. Any one "who shall continue to or persistently violate" the ordinance shall forfeit his or her license. The judge held the ordinance unconstitutional and granted the writ of mandamus.

■ The point made that the judgment in the former case between Coker and the city prevented the plaintiff from attacking the constitutionality of the ordinance is not well taken. That case went off on a point of procedure, and not upon the merits. This court expressly refused to pass on the constitutionality of the ordinance, and in effect said that the judge should not have attempted to pass on it, because the petition was not such as to authorize him to pass on it. This is an entirely different legal situation from that presented in *Georgia Railway & Power Co.* v. *Decatur,* 153 *Ga.* 329 (111 S. E. 911), and similar cases wherein it was held that a judgment of affirmance on the merits concludes all points that could have been made in support of a reversal, whether mentioned by the Supreme Court or not.

■ Coming to the substantial questions in the case, we are of the opinion that the judge did not err in granting the mandamus. It may be conceded that the police power of the city extends to

the regulation of the installation of electrical wiring and other apparatus, because of the fire hazard and the other dangers to persons from coming into contact with such appliances when defectively installed. It is obvious that the nature of electricity is such that the exertion of the police power by a municipality on those dealing with the installation and repair of electrical wiring and apparatus is justified as a method of affording the citizens of the city security, comfort, and safety in the use and occupancy of their property. See Milwaukee v. Rissling, 184 Wis. 517 (199 N. W. 61) ; Collins v. District of Columbia, 30 App. D. C. 212; Becker v. Pickersgill, 105 N. J. L. 51 (143 Atl. 859) ; Ex parte Cramer, 62 Tex. Cr. R. 11 (136 S. W. 61) ; Toledo v. Winters, 10 Ohio N. P. U. S. 661; City of Tucson v. Stewart, 45 Ariz. 36 (40 Pac. 2d, 72).

Without examining critically the details of the ordinance of the City of Atlanta, it may be said in general terms that it is reasonable and within the police power to require, as has been done, that the installation of electrical wiring and other apparatus be done under the inspection of a competent city official and according to certain standards reasonably designed to promote safety. It is also reasonable to require electrical contractors to be licensed and to pay a license fee, and to provide, as has been done, for the revocation of a license of any contractor persisting in disobeying or disregarding the provisions of the ordinance setting standards and requiring inspections of the work. We can not, however, give assent to the proposition that the police power of the city extends to requiring any one who would engage in the occupation of electrical construction to submit to the judgment of a board his ability "for the purpose of determining whether he may be reasonably expected to satisfactorily complete any contracts he enters into with citizens of Atlanta," as section 22 of the ordinance in question requires. Unless an occupation affords some "greater or more peculiar opportunity for fraud than do most of the other common occupations," the police power is not to be successfully invoked to support a regulation apparently designed to protect merely against the possibility of the person engaging in the occupation from not carrying out his contract. Bramley v. State, 187 Ga. 826 (2 S. E. 2d, 647). Examination of the competency and qualifications of the applicant to safely install or repair electrical wiring and apparatus

of the type with which he proposes to deal, by testing his knowledge of matters reasonably connected therewith, comport more with the requirements of reasonableness. The present requirements are entirely too broad in their scope to be sustained under the guise of the police power. The right to work and make a living is one of the highest rights possessed by any citizen. It may be abridged to the extent, and only to the extent, that is necessary reasonably to insure the public peace, safety, health, and like words of the police power. In dealing with a statute, reasonableness as such is not a primary matter of inquiry. Constitutional violation is necessary to justify the court in declaring a statute void; though of course the violation of the constitution may arise from unreasonableness if it extends to the point of arbitrariness or consists in unlawful discriminations. Municipal ordinances are void if they violate constitutional rights. They are also invalid if they are unreasonable. The courts may declare a municipal ordinance void as unreasonable, without declaring it unconstitutional. *City of Acworth* v. *W. & A. R. Co.,* 159 *Ga.* 610 (126 S. E. 454); *Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 670 (63 S. E. 138); *Haynes* v. *Albany,* 29 *Ga. App.* 313 (115 S. E. 30). We are of the opinion that the provisions of the ordinance in question are unreasonable in scope, in so far as they require an electrical contractor to submit to the decision of an examining board his ability satisfactorily to complete his contracts with the citizens of the city; nor does the provision for an appeal to the electric light committee relieve the unreasonableness, since no proper basis for the decision of this committee is laid down.

In this case the plaintiff did not allege the entire ordinance to be void. A petition in which a plaintiff attacks a licensing ordinance as entirely void, and in the same count seeks to compel the issuance of a license under it, is subject to demurrer on account of the repugnancy. *Adams* v. *Johnson,* 182 *Ga.* 478 (185 S. E. 805). A casual reading of the petition might give the notion that the plaintiff intended to attack so much of it as required a license at all; but a closer reading of it will indicate that the pleader probably intended to attack so much of it as required the certificate of the superintendent of electrical affairs as a condition to the issuance of the license, and those parts of the ordinance requiring examinations, etc., as a condition to the grant of the certificate.

Ambiguity or indefiniteness in this respect would itself be a ground of demurrer. The able opinion of the trial judge shows that he construed the petition as attacking only the parts of the ordinance which relate to the certificate, examination, etc. No ruling seems to have been invoked on the demurrer attacking the petition for repugnancy; but the bill of exceptions recites that the case was submitted to the judge for decision on the bill and answer. Before judgment the pleading would have been construed most strongly against the pleader, but after judgment it is construed most strongly in favor of sustaining the judgment. To strike down that part of the ordinance requiring the examination and certificate does not render ineffectual that part of the ordinance requiring the procuring of the license, and the payment of the fee. *City Council of Augusta* v. *Clark,* 124 *Ga.* 254 (52 S. E. 881); *City of Newnan* v. *Atlanta Laundries,* 174 *Ga.* 99 (162 S. E. 497, 87 A. L. R. 507); *Campbell* v. *Thomasville,* 6 *Ga. App.* 212 (64 S. E. 815). It follows that the judgment of the trial judge is the embodiment of correct legal principles.

■ The judge held unconstitutional that part of the ordinance requiring the examination and certificate to be issued by the superintendent of electrical affairs based thereon, following the decisions of this court in *Henry* v. *Campbell,* 133 *Ga.* 882 (67 S. E. 390), *Gregory* v. *Quarles,* 172 *Ga.* 45 (157 S. E. 306); *Southeastern Electric Co.* v. *Atlanta,* 179 *Ga.* 514 (176 S. E. 400), and *Dewell* v. *Quarles,* 180 *Ga.* 864 (181 S. E. 159). It is but fair to him to say that these decisions seem to support his judgment, because of the alleged unconstitutional discriminations made in the ordinance. The following cases should also be examined in this connection: Aaroe *v.* Crosby, 48 Cal. App. 422 (192 Pac. 97); State ex rel. Winkler *v.* Bengenberg, 101 Wis. 172 (76 N. W. 345); Caven *v.* Coleman (Tex. Civ. App.), 96 S. W. 774; City of Milwaukee *v.* Rissling, 184 Wis. 517 (199 N. W. 61). But we refrain from deciding the constitutional question, since by the holding that the parts of the ordinance referred to are unreasonable, and therefore invalid, it becomes unnecessary to make such an adjudication. This court will pass on the constitutionality of a statute or ordinance only where it is necessary to a decision of the case.

*Judgment affirmed. All the Justices concur.*