SHORT *v.* CITY OF CORNELIA *et al.*

No. 16259.   SEPTEMBER 7, 1948.

*Irwin R. Kimzey, Kimzey & Kimzey,* and *F. S. Lytle Jr.,* for plaintiff.

*Sam Kimzey, J. Herbert Griggs,* and *Linton K. Crawford,* for defendants.

LILLY, Judge. The court properly sustained the general demurrer and dismissed the petition seeking an injunction. The second ground of the demurrer asserted that the petition "shows on its

face that the plaintiff has an adequate and complete remedy at law." Under the allegations of the petition as to the character of business being conducted by him, and as to the occupation license tax therefor required by ordinance, mandamus was an available legal remedy, whereby the plaintiff would be entitled, on proof of such allegations, to mandamus requiring the defendant city to issue a license authorizing him to conduct his automobile salvage business; and as the only prosecution or interference alleged to be threatened was for doing business without such license, he would be amply protected by being granted such a license. It was not alleged that anything had been done which interfered with his business, but only that prosecution had been threatened for conducting his business without a license. The licensing ordinance is not attacked by the plaintiff, he alleging his offer to comply therewith and refusal on the part of the city. Consequently he could not defend prosecution, under the allegations of the petition, by attacking the validity of any ordinance, and the adequate remedy at law of making such defense would not be available to him; but his legal remedy, as stated, was mandamus and not injunction.

In *Coker* v. *Atlanta,* 186 *Ga.* 473 (3), 476 (198 S. E. 74), injunction was sought by Coker to prevent enforcement of a city ordinance requiring that electrical workers pass a written examination, which ordinance was attacked as being invalid on various grounds. The trial judge held the ordinance valid as against the attacks made and refused an injunction. This court affirmed the judgment, but on the ground that the case fell within the general rule that equity will not enjoin criminal prosecutions; it being stated in the opinion that the petition showed the "existence of adequate remedies at law by mandamus or other procedure to protect any rights which he [petitioner] might have." Thereafter the same plaintiff brought mandamus proceedings against the clerk of the city to compel issuance to him of a license, in which action the same ordinance was attacked. The attack on the ordinance was sustained, mandamus absolute granted, and this court affirmed the judgment. *Richardson* v. *Coker,* 188 *Ga.* 170 (3 S. E. 2d, 636).

In *Sullivan* v. *Johnson,* 189 *Ga.* 778 (7 S. E. 2d, 900), this court reversed the judgment of the trial court refusing a mandamus

absolute, which had been sought to compel the superintendent of electrical affairs of Atlanta to grant a permit to do certain electrical work. An attack was there made on a city ordinance under which the defendant acted. In the opinion it was stated: "According to *Richardson* v. *Coker* [188 *Ga.* 170], suit for the writ of mandamus was the proper remedy, and under the facts of the record the judge erred in refusing a mandamus absolute."

In the two cases last cited, the city officials were acting under ordinances which were attacked as being invalid, and it was held that mandamus was the appropriate remedy to test the plaintiffs' right to the relief sought. In the present case, as alleged in the petition, the act of the city authorities in refusing him a license, after his compliance with the requirements of the ordinance therefor, is without any authority whatever, and upon proof of such allegations, he would be entitled to a writ of mandamus to compel issuance of the license in question.

Under the allegations of the petition as to the licensing ordinance of the city, it was the official duty of the city authorities to issue the plaintiff a license after he had tendered to them, as admitted by the demurrer, the amount fixed therefor. "All official duties shall be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance if there shall be no other specific legal remedy for the legal rights." Code, § 64-101.

In *Brown* v. *Thomasville,* 156 *Ga.* 260 (118 S. E. 854), relied on by the plaintiff, the judgment excepted to was one refusing an interlocutory injunction after hearing evidence. The city authorities had refused to grant a renewal license to the plaintiff to conduct a drug store, and she had been prosecuted for doing business without a license after such refusal, and another case had been made against her on the same charge. The plaintiff filed a petition for injunction and the defendant demurred thereto, but the judgment refusing an injunction was entered before the appearance term of the court, and no order on demurrer was passed. As shown by the original record in this court, one ground of demurrer was "That the relief sought by the injunction in said case is not the proper remedy under the facts alleged, but that a mandamus to require the Mayor and Council of the

City of Thomasville to grant a license to plaintiff to do business in the City of Thomasville is the proper remedy, if as a matter of fact the plaintiff is entitled to any relief under the facts alleged." No reference to the demurrer was contained in the order refusing an injunction, and it does not appear otherwise that the judge considered it. The order recites that, "after hearing the evidence and argument . . injunction be and is hereby denied, and the restraining order heretofore granted . . is hereby dissolved." "A court can not finally adjudicate a case on demurrer at a hearing for interlocutory injunction before the appearance term of court, though the demurrer may be considered in passing on the question of granting or not granting the injunction." *Henderson Lumber Co. v. Waycross Ry. Co.*, 148 *Ga.* 69 (1) (96 S. E. 263). This, of course, was before passage of the act of 1925 (Code, § 81-1002), providing that, where extraordinary relief is sought, the court may pass upon demurrers at interlocutory hearing before the appearance or first term.

It will be noted that the order excepted to in the *Brown* case made no reference to either the petition or the demurrer, though necessarily they were before the trial judge. In these circumstances, we do not consider that the ruling of this court reversing the refusal of an injunction, after hearing evidence, was equivalent to holding that the ground of demurrer should have been overruled, or that under the *Brown* case the instant petition was not subject to the demurrer filed thereto.

In *Cutsinger v. Atlanta*, 142 *Ga.* 555 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), also cited and relied on by the plaintiff, the exception was to a judgment dismissing on general demurrer a petition praying for injunction to prevent interference by the city authorities with the plaintiff's operation of a rooming house, after a license therefor had been refused. The petition set out a long series of acts on the part of the city authorities interfering with her conduct of her rooming house, as to which acts this court stated in the opinion: "If we look to the allegations of the present petition, they set out, in substance, oppressive conduct on the part of the chief of police, strenuous and continuous efforts to find some violation of a law or ordinance on the part of the plaintiff or her lodgers, followed by failure, the perfectly proper conduct by her of the business in com-

pliance with all laws and ordinances, and at a place unobjectionable for the purpose, the submission by her to imposition lest the chief [of police] should in revenge prevent her from obtaining a license, which was held up for more than two months, his efforts by letter and personally to prejudice the members of the committee of council, followed by arbitrary action on their part, based on no reason or investigation, and amounting to no real exercise of discretion. She further set out facts showing threats to stop her from doing business, by constant prosecutions in the recorder's court, and danger of irreparable injury to property rights."

In headnotes 1, 2, 4, and 5 it was ruled: 1. "The business of keeping a hotel, lodging house, or rooming house is one so far affecting the public health, morals, or welfare that it is competent for the legislature, in the exercise of the police power, to authorize municipal authorities to require persons conducting such a business to obtain a license. 2. The conferring by the legislature, in general terms, of the power to grant or refuse licenses of the character mentioned in the preceding headnote in the discretion of the municipal council, without prescribing the bounds of such discretion, will not ipso facto render the grant of power void as being an effort to confer arbitrary power, but will be treated as authorizing the municipal authorities to exercise a reasonable discretion in the grant or refusal of such licenses. . . 4. While as a general rule a court of equity (or one exercising equitable jurisdiction) will not enjoin a proceeding before a recorder of a city, instituted for the purpose of punishing the violation of a penal ordinance, yet in certain cases a court having equitable jurisdiction may intervene to protect property or property rights from irreparable damage by wrongful conduct of municipal officers, although repeated prosecutions in the recorder's court, or threats thereof, may be used as a means of consummating the wrong. 5. The allegations of the petition in this case were sufficient to withstand a general demurrer, which admits the facts alleged; and it was error to sustain the demurrer and dismiss the petition."

We think that the fact as to the character of the business involved in the *Cutsinger* case, one rendering it subject to regulation under the police power, sufficiently distinguishes it from the

nature of the occupation of the plaintiff in the present case, which, according to the allegations of the petition, is such that the city officials "do not have any power or authority to prevent him from continuing" it.

It may also be stated that in both the *Brown* and *Cutsinger* cases the petition alleged actual interference with and damage to the businesses of the plaintiffs, whereas in the instant case it is only alleged that interference has been *threatened* by prosecution for violating a municipal ordinance. See, in this connection, *Cathcart Van & Storage Co.* v. *Atlanta*, 169 *Ga.* 791 (151 S. E. 489); *Howard* v. *Briarcliff Zoological Corp.*, 178 *Ga.* 595 (173 S. E. 391); *Flint* v. *Augusta*, 192 *Ga.* 318 (14 S. E. 2d, 859).

Another case relied on by the plaintiff is *Peginis* v. *Atlanta*, 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716). That was a proceeding brought to enjoin enforcement of a municipal ordinance, which purported to declare the plaintiff's business a nuisance and to revoke certain business licenses which had been granted to him. The trial judge refused an interlocutory injunction, and this court reversed the judgment. It was held in headnotes 2, 4, and 5: "2. As to a useful and per se perfectly lawful occupation, such as the keeping of a restaurant or lunch counter, the City of Atlanta has no authority to arbitrarily revoke a business license which it has granted to the proprietor thereof. . . 4. The municipal council of Atlanta has no authority by resolution to declare a business which is useful and lawful per se to be a nuisance on account of the manner in which it is conducted, and thereupon to revoke the business license which has been granted to the proprietor. 5. The thing sought to be enjoined was not a mere past transaction, but was of such character as rendered injunction an appropriate remedy." In the second division of the opinion it was stated: "The collection of a business tax on occupations which are per se useful and lawful, although the method of doing so is called a license, is quite distinct from the granting of a license, strictly so called, to conduct an occupation of an entirely different character, granted under the power of necessary police regulation and control of certain pursuits. In the former class the tax or charge is imposed for the purpose of collecting revenue; and although the mode of doing so is frequently called licensing, the real purpose is to enforce the col-

lection of municipal revenue. As to such occupations the municipal authorities are not vested with a discretion to grant or refuse licenses or to revoke such licenses at the will of the grantor. If such power were conceded to the city authorities, they might refuse to allow any dry goods merchant, hardware dealer, hotel proprietor, confectioner, butcher, or baker to conduct his business, by simply refusing to issue him a business license, or might destroy his business at will, after its establishment, by revoking his license. No such arbitrary power is conferred on municipal councils or municipal authorities."

On the question of remedy, the facts in the *Peginis* case are so different from those in the present one that the ruling as to the appropriateness of an injunction in the first-named case does not conflict with what we are now holding. The city had granted licenses to the plaintiff in that case, and the ordinance therein attacked, purporting to revoke them, was declared ineffectual. Thus the plaintiff was being harassed and his business destroyed at a time when he was licensed by the city to operate it, and consequently it was held that the conduct of the city complained of in the petition was "of such character as rendered injunction an appropriate remedy."

However, under other rulings made in the *Peginis* Case, the allegations of the petition in the instant case, if proven, would entitle the plaintiff to the writ of mandamus to compel issuance of the license applied for. In this connection, the following quotation from the *Cutsinger* case, 142 *Ga.* 555, 574, may be appropriate: "The municipal authorities did not see fit to deny the allegations of the plaintiff, but relied on a demurrer, which for the present purpose admits the truth of the allegations. They may or may not appear to be true on a hearing. But we think they set out a case sufficient to withstand a general demurrer. This does not, of course, mean that an injunction will be granted if the allegations of fact are not true." That is, on a hearing the present plaintiff will have the burden of proving the existence of the licensing ordinance as described by him, his tender of the amount required therefor, and the character of his business, all as alleged in his petition.

The petition was subject to the second ground of the general

demurrer thereto, and the court did not err in sustaining the demurrer and dismissing the petition.

All of the decisions cited by counsel for the plaintiff, as well as other cases, have been examined, and we do not consider that any of them authorizes a different conclusion from that here reached.

*Judgment affirmed. Jenkins, Chief Justice, Duckworth, Presiding Justice, Atkinson, Wyatt, and Candler, Justices, concur. Head, Justice, concurs in the judgment, but not in all that is said in the opinion.*