## HARDEN *v.* CITY OF ATLANTA.

The race-segregation ordinance of the City of Atlanta, which prohibits colored persons from occupying as a residence any house upon any block upon which a greater number of houses are occupied as residences by white people than are occupied by colored people, and vice versa, and which excepts from its operation the location of residences made before the adoption of the ordinance, and the right of occupancy of residences previously acquired by the persons entitled to occupy them, is not opposed to the bill of rights of the State constitution, which declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Nor is such ordinance repugnant to the fourteenth amendment to the constitution of

the United States, as being a denial of the equal protection of the laws and of due process of law.

AUGUST 31, 1917.

Petition for injunction.    Before Judge Pendleton.    Fulton superior court.    August 22, 1916.

*C. G. Battle,* for plaintiff.

*J. L. Mayson* and *S. D. Hewlett,* for defendant.

EVANS, P. J.    Frank Harden, a colored man, rented a house for a residence on the corner of Linden and Myrtle streets in the City of Atlanta.    He was notified by the police to vacate the premises, because the house is included in what is known as a "white block," and under an ordinance of the city a person of color is not permitted to live in a white block.    On his failure to vacate the premises he was summoned to appear before the recorder's court and charged with a violation of the race-segregation ordinance.    Thereupon he filed a petition to enjoin the city from attempting to remove him from the premises, and from further prosecuting the charge against him, on the ground that the ordinance is void as being unreasonable and unconstitutional.    The court refused an interlocutory injunction.

The material parts of the ordinance are as follows:  "Section 1.  It shall be unlawful for any colored person to move into and occupy as a residence or place of abode, or to establish and maintain as a place of public assembly, any house upon any block in which a greater number of houses are occupied as residences, places of abode, or places of public assembly by white people than are occupied as residences, places of abode, or places of public assembly by colored people."    Section 2 is identical with section one, except it applies to white persons living in a block of colored people.    Section 3 defines what is meant by a block.    Section 4 is as follows:  "Nothing in this ordinance shall affect the location of residences, places of abode, or places of public assembly, made previous to the approval of this ordinance; and nothing herein shall be so construed as to prevent the occupation of residences, places of abode, or places of public assembly by white or colored servants or employees of occupants of such residences, places of abode, or places of public assembly on the block on which they are employed; nor shall anything herein contained be construed to prevent any person who, at the date of the passage of this ordinance, shall have acquired or possessed the right to occupy any

building as a residence, place of abode, or place of public assembly, from exercising such a right; nor shall anything herein contained prevent the owner of any building now leased, rented, or occupied as a residence, place of abode, or place of public assembly for colored persons, from continuing to rent, lease, or occupy such residence, place of abode, or place of public assembly for such persons, if the owner shall so desire; but if such house should, after the passage of this act, be at any time leased, rented, or occupied as a residence, place of abode, or place of assembly for white persons, it shall not thereafter be used for colored persons, if such occupation would then be a violation of section one hereof. Nor shall anything herein contained prevent the owner of any building now leased, rented, or occupied as a residence, place of abode, or place of assembly for white persons, from continuing to rent, lease, or occupy such residence, place of abode, or place of assembly for such purpose, if the owner shall so desire; but if such house should, after the passage of this act, be at any time leased, rented, or occupied as a residence, place of abode, or place of assembly for colored persons, it shall not thereafter be so used for white persons, if such occupation would then be a violation of section two hereof." The remaining sections are not material to the present controversy.

The plaintiff in error rented the house subsequently to the enactment of the ordinance. The ordinance is attacked as unconstitutional on the ground that it violates the declaration in the bill of rights that "Protection to person and property is the paramount duty of government, and shall be impartial and complete," and is opposed to the fourteenth amendment of the Federal constitution, which forbids a State to make or enforce a law which shall abridge the privileges or immunities of citizens of the United States, or one which shall deprive any person of life, liberty, or property without due process of law, or which shall deny to any person within its jurisdiction the equal protection of the laws. No point is made on the power of the municipal legislature to pass the ordinance if it be not opposed to the constitution of Georgia or that of the United States. The pivotal issue is the liability of the ordinance to the constitutional attacks made against it.

Some time ago the City of Atlanta enacted an ordinance of a similar nature, which contained no reservation for the protection

of rights existing at the time of the adoption of the ordinance. This court held that ordinance to be void as being opposed to the due-process clause of the constitution. *Carey* v. *City of Atlanta*, 143 *Ga.* 192 (84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151). The two sections of the ordinance under review in that case contained no exception of residences, places of abode, or places of public assembly, made previously to the adoption of the ordinance. That ordinance was repugnant to the constitution, because of its failure to exempt from its operation present vested rights. The ordinance now attacked, in the fourth section thereof, expressly excludes from its operation vested rights existing at the time of its adoption. So that the question for determination in this case is the constitutional power of the legislature to pass a race-segregation ordinance of this character.

The fundamental difference in the arguments for and against the validity of an ordinance of the kind we are considering is the conception of the relation of the police power to property ownership. The advocates of the invalidity of the ordinance deny either that property rights ever are limited by the police power, or, if so limited in any case, that such a limitation can be extended to a case like this. A reasonable restraint upon alienation of property by individuals not only pervades our statute law, but is found in our State constitution. The law prescribing the manner of executing wills and deeds in order to be effective as conveyances of title is to some extent a restriction on the alienation of property. Likewise is the provision that a person under twenty-one years of age can not make a deed to land. The proscription against a married woman selling property to her husband, or conveying her separate estate in settlement of the debts of her husband, or entering into a contract of suretyship, has never been supposed to be void as destroying any right of absolute ownership of property. The fact that police regulations may limit the use of property in ways which greatly diminish its value does not necessarily render them void. Rideout v. Knox, 148 Mass. 368 (19 N. E. 390, 2 L. R. A. 81, 12 Am. St. R. 560); Camfield v. U. S., 167 U. S. 518 (17 Sup. Ct. 864, 42 L. ed. 260). We take it that no one can successfully maintain that the right of individual ownership of property is so absolute as to override the welfare and safety of the public. As was said by Mr. Justice Field in Crowley v. Christensen, 137

U. S. 86, 90 (11 Sup. Ct. 13, 34 L. ed. 620) : "The right to acquire, enjoy, and dispose of property is declared in the constitutions of several States to be one of the inalienable rights of man. But this declaration is not held to preclude the legislature of any State from passing laws respecting the acquisition, enjoyment, and disposition of property. What contracts respecting its acquisition and disposition shall be valid and what void or voidable, when they shall be in writing and when they may be made orally, and by what instruments it may be conveyed or mortgaged, are subjects of constant legislation. And as to the enjoyment of property, the rule is general that it must be accompanied with such limitations as will not impair the equal enjoyment by others of their property. *Sic utere tuo ut alienum non lædas* is a maxim of universal application." It is under this principle that the courts hold that congested municipalities may establish fire limits and require buildings in certain limits to be built of noncombustible material. In large congested centers of population courts of equity have restrained the building of livery-stables, glue factories, etc., in residential sections. But it may be contended that such restrictions are permissible as a protection for the public safety and the public health, and that these considerations do not apply to a race-segregation ordinance. Courts are not blind to the fact that by nature there are several races of people, and that the conditions of civilization compel certain regulations relating to the contact of the races. A public policy long in existence in this State, firmly entrenched in our statutes and decisions, upholds racial integrity. The white and black races have been forbidden intermarriage, and have been separated in public conveyances, inns, hotels, theaters, and public schools. If it be justifiable to separate the races in the public schools in recognition of the peril to race integrity, induced by mere race association, then we can not see why the same public policy can not be invoked to prohibit the black and white races from living side by side. Segregation is not imposed as a stigma upon either race, but in order to uphold the integrity of each race and to prevent conflicts between them resulting from close association. An ordinance designed to accomplish this purpose will be upheld, notwithstanding that to some extent the use of property may be somewhat restricted; as the principle is well rooted in our jurisprudence that reasonable restraints upon the use of private

property and upon the liberty to contract do not constitute a deprivation of life, liberty, or property without due process of law. For an able and learned discussion on this subject the reader is referred to the case of Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. ed. 205). The ordinance in the case under review is a reproduction of that adopted by the City of Louisville, Ky., which was upheld as constitutional by the Court of Appeals of Kentucky in an able opinion by Hannah, J., in Harris v. City of Louisville, 165 Ky. 559 (177 S. W. 472). We agree with the conclusion reached by the court in that case. As held by the Supreme Court of the United States in Noble State Bank v. Haskell, 219 U. S. 104 (31 Sup. Ct. 186, 55 L. ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487), "the broad words of the fourteenth amendment are not to be pushed to a drily logical extreme, and the courts will be slow to strike down as unconstitutional legislation of the States enacted under the police power." See, in this connection, Hadacheck v. Sebastian, 239 U. S. 394 (36 Sup. Ct. 143, 60 L. ed. 348, Ann. Cas. 1917B, 927). After careful consideration we do not think the ordinance either unreasonable or opposed to the constitution of this State or of the United States upon the grounds stated. Hopkins v. City of Richmond, 117 Va. 692 (86 S. E. 139).

*Judgment affirmed. All the Justices concur, except*

ATKINSON, J., dissenting. Under the constitution and general law, any person, irrespective of race, may own or acquire land anywhere in the City of Atlanta. Such right carries with it the right to reside on land lawfully acquired. The municipal ordinance in question undertakes to deny such rights of acquisition and enjoyment of property on the mere basis of racial distinction, which the constitution forbids. By denying the right it goes beyond mere regulatory legislation. While the ordinance differs somewhat from that involved in the case of *Carey* v. *City of Atlanta* (cited in the opinion supra), it violates the basic principles applied in that case. There can be no competition between the police power and the mandates of the constitution; the latter are supreme. If it is desired to have segregation of a character that denies the right of a citizen to acquire a home in which to reside, at any place he may choose, upon the sole basis of racial distinction, that object should be accomplished by an amendment to the constitution. In the majority opinion it is urged that the ordinance in question con-

tains certain exceptions that did not exist in the ordinance in-
volved in the *Carey* case; and that after eliminating the features so
excepted, the balance of the ordinance is constitutional. A proper
criticism of this contention is that the cause which renders the
things excepted obnoxious to the constitution extends to that which
was left in the ordinance, namely, the denial of the right of a citi-
zen to acquire and live in his home where he pleases, on the sole
basis of racial distinction.