### CHAIRES *et al. v.* CITY OF ATLANTA; *et vice versa.*

1. The City of Atlanta passed an ordinance which, in the second section, contains the provision that "all barber-shops in the City of Atlanta shall hereafter be closed during the week-days at 7 o'clock p. m., except on Saturdays, when they shall close at 9 o'clock p. m." By amendment to this section it is provided that the opening hour shall be 5:30 a. m. *Held,* that the ordinance is void on the ground that it is unreasonable.
2. The court did not err in enjoining the enforcement of so much of section 1 of the ordinance as prohibits colored barbers "from serving as barbers [white] children under the age of 14 years." This section is void, being in violation of those sections of the State and Federal constitutions which guarantee equal protection of the laws, inviolability of property rights, and due process of law.
3. There was no such error in the court's ruling upon admissibility of evidence as requires the grant of a new trial.
4. While equity will not ordinarily enjoin a criminal prosecution, yet where repeated prosecutions are threatened under a void municipal ordinance, and the effect of such prosecutions would tend to injure or destroy the property of the person so prosecuted, or interfere with and destroy the lawful business of such person, or deprive him of the legitimate prosecution of his business, equity will entertain a suit to inquire into the validity of the ordinance and to enjoin its enforcement.

Nos. 5648, 5649. SEPTEMBER 14, 1927.

Petition for injunction. Before Judge Humphries. Fulton superior court. August 14, 1926.

---

Constitutional Law, 12 C. J. p. 921, n. 59, 60; p. 924, n. 79; p. 951, n. 54; p. 959, n. 97 New; p. 1159, n. 28; p. 1161, n. 86, 87; p. 1172, n. 43, 47; p. 1273, n. 26.

Injunctions, 32 C. J. p. 279, n. 56; p. 280, n. 59; p. 282, n. 14; p. 284, n. 40; p. 285, n. 45.

Municipal Corporations, 43 C. J. p. 229, n. 70; p. 232, n. 84; p. 322, n. 24, 32; p. 360, n. 72, 73.

New Trial, 29 Cyc. p. 780, n. 49; p. 781, n. 50.

R. C. Chaires and numerous other plaintiffs brought their petition against the City of Atlanta, and sought to have enjoined the enforcement of an ordinance of the city which had been recently passed, as follows:

"Be it ordained by the Mayor and General Council of the City of Atlanta, as follows:

"Section 1. Hereafter no colored barbers shall serve, as a barber, white women, white girls, or children under the age of fourteen years old, meaning by this doing any of the work such as barbers ordinarily perform and as defined by the statute of the State of Georgia.

"Section 2. All barber-shops in the City of Atlanta shall hereafter be closed, during week-days, at 7 o'clock p. m., except on Saturday, when they shall close at 9 o'clock p. m."

"Section 3. Any barber, their agents or employes, or the manager of any barber-shop, violating either of the foregoing sections shall be deemed guilty of an offense, and on conviction thereof in the recorder's court shall be punished by a fine not exceeding $200.00, or sentenced to work on the public works of the city for not exceeding 30 days, either or both penalties to be inflicted in the discretion of the recorder."

Section 4 of the ordinance is the repealing clause.

No injunction was sought against so much of section 1 as prohibits colored barbers from serving "white women and white girls." Injunction was sought against section 2 of the ordinance. Section 2, as was shown by evidence introduced, was amended by adding thereto the provision that after closing at the hours specified in the ordinance they should not open until 5:30 a. m. of the following day, and after closing at 9 p. m. on Saturdays, they should not be opened before 5:30 on the following Mondays. Two of the plaintiffs in this case are white men, and operate barber-shops for white people, in which colored men are employed as barbers; and the other plaintiffs are colored men, and about half of them own and operate barber-shops for white people, in which colored barbers are employed; and others of the plaintiffs operate barber-shops for colored people, or are employed as such.

The ordinance is attacked upon the ground that it is in violation of the fourteenth amendment to the Federal constitution, because it deprives petitioners of their liberty and property without

due process of law, and denies petitioners the equal protection of the laws; that it violates article 1, section 1, paragraphs 2 and 3, of the constitution of the State of Georgia, in that it prevents plaintiffs and each of them from following, for the purpose of making a living in a lawful way, one of the lawful and ordinary vocations of life, for which plaintiffs are well qualified by training and experience, while barbers other than colored barbers are not prevented from so doing; that it takes from plaintiffs and each of them the right to do lawful work for their customers' children under fourteen years of age, under lawful contract, while barbers who are not colored are permitted to do such work; that it deprives plaintiffs of the right to make contracts about their affairs and business, and to make contracts to perform lawful labor. The ordinance is also attacked upon the ground that it is void because the City of Atlanta, under its charter, has no power or authority to pass it or to enforce it; that section 2 of the ordinance is void for the reason that the City of Atlanta has no express charter authority to pass it, and no power otherwise to pass it; that the section last referred to is not an appropriate and legitimate means for the accomplishment of any lawful purpose; that the City of Atlanta has no right or authority under its charter to regulate the hours of employment in shops, stores, and other places of business, and if it had such power, it is contended that this ordinance is not a proper exercise thereof; and further, that the legislature of the State of Georgia, under specifically designated sections of the Code, undertook to provide in detail as to who should be considered barbers in this State, their qualifications, the method by which they should obtain certificates entitling them to practice their trade, how shops should be run, etc. It is further contended that if the City of Atlanta has any authority to legislate on the subject, this ordinance is arbitrary and unreasonable, and for that reason is void: that section 1 of the ordinance, in forbidding plaintiffs to do work for children under fourteen years of age, seeks to make a classification based on color only, and has no regard to the wishes of the white people who would be perfectly free, in the absence of such an ordinance, to employ or refuse to employ colored barbers, and such a classification is unjustly and unreasonably discriminatory, and violative of those provisions of the constitution of the United States and the State of Georgia hereinabove referred

to, and that such a classification is unreasonable and arbitrary and serves no valid purpose and accomplishes no useful or lawful end, and is therefore void. It is contended that section 2 of the ordinance is so arbitrary and unreasonable as not to constitute a legitimate exercise of the police power, and that there is no valid ground for making a distinction and classification as to barbershops. The prayers of the petition are that the court declare that section 2 of the ordinance, and so much of section 1 thereof as forbids colored barbers from serving as barbers children under the age of fourteen years, is null and void, and that the City of Atlanta and its officers be enjoined from enforcing section 2, and so much of section 1 as applies to children under fourteen years of age. The defendant filed its answer, and also demurred. After hearing evidence the court rendered its judgment wherein the city is enjoined from enforcing so much of section 1 of the ordinance as forbids colored barbers to serve as barbers "children under the age of fourteen years." The court further adjudged that the prayers of the petition "to enjoin the enforcement of section 2 of the ordinance" be denied. To the latter ruling the petitioners excepted. By cross-bill of exceptions the City of Atlanta assigned error on the judgment partly enjoining enforcement of section 1. The city also excepted to rulings excluding certain affidavits and documentary evidence offered.

*Brandon & Hynds, Little, Powell, Smith & Goldstein,* and *Alston, Alston, Foster & Moise,* for plaintiffs.

*J. L. Mayson* and *Alexander & McLarty,* for defendant.

BECK, P. J. (After stating the foregoing facts.)

1. We are of the opinion that the court erred in refusing to enjoin the enforcement of section 2 of the ordinance in question. The amendment to section 2, which is shown in the evidence, did not remove the objectionable features of the ordinance. The questions made as to the validity of section 2 of the ordinance are important, but are by no means novel. The same questions have been considered and decided by courts of last resort in several States of this country. While the precise question presented has not been ruled on by this court, decisions have been rendered by this court which announced principles that are applicable to the issues here presented. We can reach no other conclusion than that section 2 of the ordinance is not based upon a lawful classification, and that it is discriminatory. The provisions of section 2 are not

made applicable to other places of business, with the exception of certain places of business of such a character as differ in such material particulars as to justify a closing ordinance as to them. For instance, pool and billiard-rooms are required to close at 10 o'clock at night; pawnshops are closed at 8 o'clock; junk-dealers are forbidden by an ordinance of the city from carrying on their business of handling junk as dealer or buyer, or otherwise, later than 6 o'clock p. m. or earlier than 6 o'clock a. m.; and soda-water, soft-drink and ice-cream vendors are forbidden to sell on the sidewalk near the places of business of such dealers, except from 9 o'clock in the morning until 11:30 at night, though sales are at all times permitted inside the dealers' places of business. There are reasons for closing pawnshops and junk-shops and pool and billiard-rooms, which it is not necessary here to set forth, but which are clearly not applicable to barber-shops. Persons engaged in the operation of barber-shops are carrying on a perfectly lawful business. It is not in any sense of the word a noxious business. In fact, the business may be regarded as indispensable in the present development of our civilization, if we have regard to the requirements of decency and cleanliness. There is ample evidence in the record to show that if the barber-shops are closed at 7 o'clock in the evening and not permitted to open until next morning, there will be a large and numerous class of citizens, both white and colored, who can not avail themselves of the service of barbers. It is shown that certain mercantile establishments, having in their service numerous employees, require the attendance of those employees until a later hour than that at which the barber-shops under this ordinance would be required to close. And in addition to this, those engaged in domestic service and in the various branches of such service are detained in the discharge of their duties in this employment to an hour that would prevent their availing themselves of the service rendered in barber-shops, if such shops are closed at the hour of 7 o'clock. The section of the ordinance with which we are now dealing is therefore void, as being unreasonable, upon the grounds which we have stated above; and other grounds could be adduced if necessary. And it is discriminatory, because it selects one particular lawful business, that is in no wise noxious, and requires those operating this business to close at a very early hour, but leaves unregulated as to hours of closing various other businesses.

In ex parte Leo Jentzsch, 32 L. R. A. 664 (112 Cal. 468, 44 Pac. 803), the Supreme Court of California thus decided the identical question now before us: "A statute prohibiting barbers to carry on business after twelve o'clock on Sunday or on a legal holiday, and applying to no other class of labor, is unconstitutional as special, unjust, and unreasonable, working an invasion of individual liberty, since it is based upon no distinction to justify singling out that class of laborers." In the course of the opinion the California court said further: "The laboring barber engaged in a most respectable, useful, and cleanly pursuit, is singled out from the thousands of his fellows in other employments, and told that, willy nilly, he shall not work upon holidays and Sundays after 12 o'clock noon. His wishes, tastes, or necessities are not consulted. If he labors, he is a criminal. Such protection to labor, carried a little further, would send him from the jail to the poor-house." If section 2 of the ordinance was adopted because, as it is urged, barber-shops afford peculiar facility for the commission of offenses against the laws, and because their remaining open at night makes it more difficult to enforce the laws referred to, and particularly those laws which relate to the illegal sale of narcotics and intoxicants, it can not be sustained; because, while some facts are shown by the city sustaining the contention that the prohibition laws were violated in certain instances in barber-shops at night, those instances were comparatively few, and it is certainly not shown that more violations of the laws referred to would have been apprehended in case barber-shops were allowed to remain open until late hours at night than would have been if certain other businesses were kept open by those operating them until a late hour. For instance, pool and billiard-rooms can be operated until 10 o'clock at night; and other businesses might be specified which can be carried on, under the ordinance of the city, until a much later hour. In the case of *Watson* v. *Thomson,* 116 *Ga.* 546 (42 S. E. 747, 59 L. R. A. 602, 94 Am. St. R. 137), it was said: "A municipal corporation can not, under the general welfare clause usually found in municipal charters, prohibit one from carrying on a lawful vocation on Christmas day, when there is nothing in the character of the business carried on which is calculated to interfere with the peace, good order, and safety of the community." In the case of *Clein* v. *Atlanta,* 164 *Ga.* 529 (139 S. E. 46), this court

had under consideration an ordinance regulating the hours during which the business of auctioning jewelry might be conducted. This also involved the right, of course, to make a classification of the business of auctioning jewelry. The classification was there recognized as legitimate; but the features of that business which rendered the classification there legitimate do not exist as regards the barber business. In the decision of the *Clein* case several cases are cited which bear upon the question now before us, and for that reason we have referred to the case.

A case closely in point here is that of Yee Gee *v.* San Francisco, 235 Fed. 757, where the plaintiff, a native-born citizen of the United States but of the Chinese race, had for many years owned and conducted a public laundry in the City of San Francisco; and he brought his bill in equity to restrain the enforcement of an ordinance of the board of supervisors, regulating laundries, and particularly to restrain the enforcement of certain provisions thereof on the ground that they violated the 14th amendment to the constitution of the United States, and that such enforcement would deny to plaintiff the equal protection of the laws and deprive him of his property rights without due process of law. The general assignment of invalidity involving the operation of the ordinance as a whole was "that it is unreasonable and arbitrarily discriminatory." Among the features of the ordinance assailed was a provision limiting and restricting the hours of the day within which such business might be carried on and laundry work performed in a manner and to an extent which it was asserted rendered such restrictions wholly unreasonable and void as the exercise of the police power. This is the provision in the ordinance thus attacked: "Sec. 9. No person or persons owning or employed in the public laundries or public wash-houses provided for in section 1 of this ordinance shall wash, mangle, starch, iron, or do any other work on clothes between the hours of 6:00 o'clock p. m. and 7:00 o'clock a. m., nor upon any portion of that day known as Sunday." The judge writing the opinion in that case said: "Section 1 embraces within its terms all public laundries or wash-houses 'within the limits of the City and County of San Francisco.' It will thus be seen that the terms of section 9 apply to all laundries maintained in the entire territory embraced within the city limits, without regard to differing conditions existing in different sections

or districts thereof, the density of population or character of buildings, or the situation or relation of the laundry to other structures or premises, as calculated to cause danger of fires, or other objectionable considerations. It is claimed that this sweeping and all-inclusive nature of the restriction, with its limitation on the number of hours prescribed for carrying on the business, having regard to its intrinsic nature, renders the provision subject to the objection that it constitutes an undue and unreasonable restraint upon plaintiff's right to pursue his occupation, and as such is in violation of his rights under the constitution. The defendants contend, on the other hand, that it is a perfectly reasonable and proper police regulation, and one within the power of the board of supervisors to enact; and in support of this contention they place their reliance upon the cases of Barbier *v.* Connolly, 113 U. S. 29, 5 Sup. Ct. 357, 28 L. ed. 923, Soon Hing *v.* Crowley, 113 U. S. 707, 5 Sup. Ct. 730, 28 L. ed. 1145, and In re Wong Wing, 167 Cal. 109, 138 Pac. 695, 51 L. R. A. (N. S.) 361. The first two cases involved provisions couched in precisely similar terms in two different laundry ordinances of the City and County of San Francisco, whereby, within certain prescribed limits of the city, the washing and ironing of clothes in public laundries was prohibited between the hours of 10 o'clock at night and 6 o'clock in the morning. The court in Barbier *v.* Connolly held that the provision was not unreasonable or discriminatory, but was 'purely a police regulation, within the competency of any municipality possessed of the ordinary powers belonging to such bodies.' And in Soon Hing *v.* Crowley, referring to its previous ruling in the Barbier case, repeated substantially the language above quoted and added:

"'And it is of the utmost consequence in a city subject, as San Francisco is the greater part of the year, to high winds, and composed principally within the limits designated of wooden buildings, that regulations of a strict character should be adopted to prevent the possibility of fires. That occupations in which continuous fires are necessary should cease at certain hours . . would seem to be, under such circumstances, a reasonable regulation as a measure of protection. At any rate, of its necessity for the purpose designated the municipal authorities are the appropriate judges. The regulations in this matter are not subject to any interference by the Federal tribunals, unless they are made the occasion for in-

vading the substantive rights of persons, and no such invasion is caused by the regulation in question.' In re Wong Wing involved a provision in the then-existing ordinance of San Francisco practically identical in its terms with the limitation under consideration in the present case. In response to the objection of unreasonableness here urged, its validity was sustained; the court in a comparatively brief opinion, after stating the question, saying: '.This court and the Supreme Court of the United States have declared constitutional an ordinance very similar to the one before us, where the restriction upon the hours of labor required the cessation of work in public laundries between the hours of 10 o'clock p. m. and 6 o'clock a. m. Ex parte Moynier, 65 Cal. 34, 2 Pac. 728; Barbier v. Connolly, 113 U. S. 29; Soon Hing v. Crowley, 113 U. S. 707. The principles announced in those cases have been so frequently upheld, and the authorities themselves have been so often cited, that extended discussion of the opinions is quite unnecessary.' And, after stating the principles there announced, it is concluded: 'We are therefore to determine whether the limitations of the time of labor in public laundries to 11 hours each day is a restriction so unreasonable that it invades the constitutional rights of persons engaged in the laundry business. We can not say that it does. Very many, perhaps a majority, of occupations, employments, and forms of business in San Francisco are, conducted during less than 11 working hours a day.' It will thus be seen that the Supreme Court of California rested its ruling largely, if not entirely, upon the authority of the Barbier and Soon Hing cases, under the assumption that the principles there announced had equal application to the regulation before them. With the greatest respect for the views of that court, I think its opinion fails to take note of the very material difference between the two measures. In the one instance, the regulation was restricted in its application to certain specified and defined districts of the city, and prescribed a period of cessation from labor well within the acceptation of what would at once be regarded as having reasonable relation to the object sought, that of the protection of the public from the danger of uncontrolled fires. In the other, the regulation is made to apply to the entire limits of a great city, embracing a territory some 10 miles wide by 15 miles long, without regard to differing physical conditions obtaining therein, and with a limita-

tion of the hours of labor to a period which, to say the least, having regard to the nature of the business, at once gives rise to a question in the mind whether it bears any reasonable relation to any conceivable necessity for protection to the public from such dangers. It seems to me that this radical difference between the two regulations may not be ignored. That the Supreme Court of the United States did not ignore it will at once appear from their discussion of the subject. They repeatedly refer to the fact that in the cases before them the regulation as to hours of labor applied only to certain specified limits within the city, and they construe its purpose to have reference to the special conditions existing in those districts."

We have made this lengthy quotation from the case because it differentiates certain other cases decided by the Supreme Court of the United States, and other courts, which seem to announce principles relied upon by the defendant in the instant case.

In the case of Johnson v. Philadelphia, 94 Miss. 34 (47 So. 526, 19 L. R. A. (N. S.) 637, 19 Ann. Cas. 103), the Supreme Court of Mississippi had under consideration the question as to whether an injunction should be granted against the town to prevent the enforcement of an ordinance which required skating-rinks to be closed at 6 o'clock p. m. Injunction was sought on the ground that the ordinance was not a reasonable exercise of the power given to the municipality "to regulate, suppress, and impose a privilege tax on skating-rinks," etc. The court held that the ordinance was unreasonable and void. In the course of the opinion it was said: "We can establish no fixed and permanent guide to settle in future cases what is and what is not a reasonable exercise of the power of regulation. Each case must largely be determined by its own facts. In the Crittenden case we held that the municipality may provide the hours during which a place of business of the character under discussion may be kept open, etc., yet, when the hours prescribed ruin the business under the guise of regulating, such a regulation is unreasonable. The nature of the business being conducted forms an element for the consideration of the court in determining whether or not an ordinance is unreasonable as an ordinance regulating a business. It is unreasonable to say that a skating-rink shall be kept open only between the hours of 6 a. m. and 6 p. m., and such ordinances can not be upheld." And the court quoted ap-

provingly from Freund on Police Power, as follows: "The require-ment of reasonableness is so general in its nature that it allows the courts to exercise a very efficient control over ordinances with-out being under the necessity of formulating in each case a prin-ciple which would be a guide for other cases." Other reasons, other arguments, and other authorities might be adduced sustaining the conclusion which we have reached, that the section of the ordinance now under consideration, that is, section 2, is void as being dis-criminatory and unreasonable. And holding that the ordinance is unreasonable, we decide that it is invalid. And deciding that it is invalid upon the ground just stated, it is unnecessary to go into the question as to whether it is in violation of either the State or Federal constitution. It follows from what we have said that the court erred in denying the prayers of petitioners that the enforce-ment of section 2 of the ordinance be enjoined.

2. In the petition it is prayed that the City of Atlanta and its officers be enjoined from enforcing so much of section 1 of the ordinance in question here as forbids colored barbers from serving as barbers children under the age of 14 years. The court granted the injunction as to that part of the ordinance, and the defendant in the cross-bill of exceptions assigns error upon that judgment. Reading the clause "children under the age of 14 years" in con-nection with its context, we are satisfied that it was the intention of the council to make it applicable to white children only; and counsel for the city contend that such was the meaning. So con-struing it, we are nevertheless of the opinion that the court did not err in enjoining the enforcement of that part of the ordinance last referred to. As already seen, we have held that section 2 of the ordinance is void on the ground that it is unreasonable, and de-clined to rule upon the question as to whether or not it is void on the ground of its unconstitutionality. But we are of the opin-ion that that part of section 1 the enforcement of which the court has enjoined is void as being in conflict with the provision of the 14th amendment of the constitution of the United States, and the similar provision in the constitution of the State of Georgia, which forbids the enactment of a law which deprives any person of life, liberty, or property without due process of law, or which denies to any person the equal protection of the laws. The right to carry on a lawful business is here denied to one class of the citizens of

the State, and the denial is based upon a distinction which is not permissible under the constitution to make. It is the distinction that is based upon the color of that class of citizens to whom is denied the right, in part, to carry on their business and to earn a livelihood. In so deciding this question we are keeping in view the manifest meaning of that portion of the constitution to which we have referred, in the light of decisions which have been rendered both by the Federal Supreme Court and State courts.

In the case of *Carey* v. *Atlanta*, 143 *Ga*. 192 (84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151), it was said: "Sections 1 and 2 of the ordinance of the City of Atlanta, adopted June 16, 1913, and the corresponding sections of an amendment thereto, adopted November 3, 1913, prohibiting white persons and colored persons from residing in the same block, deny the inherent right of a person to acquire, enjoy, and dispose of property, and for this reason are violative of the due-process clause of the Federal and State constitutions." Counsel for defendant, plaintiff in the cross-bill of exceptions, in their argument say that, "the *Carey* case had this much similarity with the case at bar, that it dealt, to a certain extent, with the race question. Outside of this it has nothing in common. It related solely to property rights." Conceding that this is true so far as it goes, we must not lose sight of the fact that that case, as well as the case of *Glover* v. *Atlanta*, 148 *Ga*. 285 (96 S. E. 562), dealt with ordinances which might affect or limit the rights of property-owners, where the property-owner was colored, in a manner that would not have been applicable to a white person who was the owner in the same circumstances. In the *Glover* case it was ruled: "In Buchanan v. Warley, 245 U. S. 60 (38 Sup. Ct. 60, 62 L. ed. 149, Ann. Cas. 1918A, 1201), a case involving the validity of the ordinance of the City of Louisville, Ky., decided subsequently to the decision of *Harden* v. *City of Atlanta*, the Supreme Court of the United States held: 'An ordinance which forbids colored persons to occupy houses in blocks where the greater number of houses are occupied by white persons, in practical effect prevents the sale of lots in such blocks to colored persons, and is unconstitutional. A white owner, who has made an otherwise valid and enforceable contract to convey such a lot to a colored person, for the erection of a house upon it for occupancy by the vendee, is deprived, in violation of the fourteenth amendment, of an essential

element of his property,—the right to dispose of it to a constitutionally qualified purchaser. . . A city ordinance forbidding colored persons from occupying houses as residences, or places of abode or public assembly, on blocks where the majority of the houses are occupied by white persons for those purposes, and in like manner forbidding white persons when the conditions as to occupancy are reversed, and which bases the interdiction upon color and nothing more, passes the legitimate bounds of police power, and invades the civil right to acquire, enjoy, and use property, which is guaranteed in equal measure to all citizens, white or colored, by the fourteenth amendment.' "

In the case of *Harden* v. *Atlanta*, 147 *Ga.* 248 (93 S. E. 401), which was a case involving the validity of a race-segregation ordinance of the City of Atlanta, itself a reproduction of an ordinance adopted by the City of Louisville, Ky., this court in an opinion by a majority of the Justices held that such an ordinance was not repugnant to the fourteenth amendment to the constitution of the United States. But subsequently the decision by this court in *Harden's* case was reviewed upon request, and of course overruled in view of the decision in Buchanan v. Warley, supra, which was controlling upon the question involved. While the case of *Carey* and that of *Glover* dealt with property rights, this case deals with the right to labor, which is analogous to property rights and comes under the protection of the same laws which guarantee property rights. The right to purchase or sell labor is a part of the liberty protected by the fourteenth amendment; as is also the right to make a contract in relation to one's business. In the case of Coppage v. Kansas, 236 U. S. 1 (35 Sup. Ct. 240, 59 L. ed. 441, L. R. A. 1915C, 960), the Supreme Court of the United States used this language: "Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense." In the case of Truax v. Raich, 239 U. S. 33 (36 Sup. Ct. 7, 60 L. ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283), which involved the constitutionality, under the equal-

protection provision of the fourteenth amendment, of an act of the legislature of the State of Arizona relative to the employment of aliens in that State, it was said: "It is sought to justify this act as an exercise of the power of the State to make reasonable classifications in legislating to promote the health, safety, morals, and welfare of those within its jurisdiction. But this admitted authority, with the broad range of legislative discretion that it implies, does not go so far as to make it possible for the State to deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood. It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the amendment to secure. Butchers' Union Co. *v.* Crescent City Co., 111 U. S. 746, 762 [4 Sup. Ct. 652, 28 L. ed. 585]; Barbier *v.* Connolly, 113 U. S. 27, 31 [5 Sup. Ct. 357, 28 L. ed. 923]; Yick Wo *v.* Hopkins, 118 U. S. 356 [6 Sup. Co. 1064, 30 L. ed. 220]; Allgeyer *v.* Louisiana, 165 U. S. 578, 589, 590 [17 Sup. Ct. 427, 41 L. ed. 832]; Coppage *v.* Kansas, 236 U. S. 1, 14 [supra]. If this could be refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words. It is no answer to say, as it is argued, that the act proceeds upon the assumption that 'the employment of aliens unless restrained was a peril to the public welfare.'"

We do not think that evidence tending to show that a large percentage of the colored race is afflicted with a highly infectious disease would justify the classification upon which this ordinance is based. The ordinance does not limit the right of colored barbers to serve as such upon the ground that they are afflicted with the disease referred to. It is not based upon that contagious disease, but is based upon color. The operation of this ordinance would in its enforcement prevent a colored man who is free from any disease, and who may be able to demonstrate his freedom in this respect before any competent examiner, from serving white children. If the disease specifically referred to is so general as certain evidence which was offered and rejected tends to show, then the prevalence of that disease among the members of the colored race would also authorize, if it is competent for the city to pass this ordinance, an

ordinance to prevent colored people from being cooks, nurses, or launderers. A colored nurse afflicted with this disease comes in more dangerous contact with children than the barber who cuts or curls the hair of a white child. And what shall we say of the cook who handles and prepares the food that is placed upon the table? Besides these considerations, the State legislature has passed an act dealing in detail with barbers and their business, one of the purposes of this act being to prevent the conditions that endanger the health of that part of the public which patronizes barber-shops. In section 1754(a) of the Code it is provided that "It shall be unlawful for any person to follow the occupation of barbering in cities or towns in excess of five thousand inhabitants, unless he will have first obtained a certificate of registration as provided in this Chapter." And in section 1754(d) it is provided that "Such board [the board of examiners] shall have power to adopt reasonable rules and regulations prescribing the sanitary requirements of a barber-shop, subject to the approval of the State board of health. . . Any member of said board shall have power to enter and make reasonable examination of any barber-shop in cities in excess of five thousand inhabitants in this State, during business hours, for the purpose of ascertaining the sanitary conditions thereof. Any barber-shop in which tools, appliances, and furnishings in use therein are kept in an unclean and unsanitary condition, so as to endanger health, is hereby declared to be a public nuisance, and the proprietor thereof shall be subject to prosecution and punishment therefor." And in the same act are other provisions regulating barber-shops with reference to the health and welfare of the public.

The contention of counsel for defendant in error in the main bill of exceptions, that the ordinance involved in this case is not to be. confused with those laws looking to the segregation of races in public places, such as laws requiring equal and separate accommodations in railway carriages and laws which exclude members of the colored race from theaters and hotels which entertain white people only, and other similar laws, is sound. Within certain limitations these segregation statutes are generally and properly upheld, where they are merely regulatory, and do not destroy nor impinge upon property rights. The necessity for them grows out of social habits

49

and traditions of the Southern States and the situation of our people relative to the colored race, and the absolute and unchanging necessity of keeping the races separate.

3. There is no such error in the court's ruling upon the admissibility of evidence as requires the grant of a new trial. Certain portions of the evidence offered by defendant and held by the court to be inadmissible were irrelevant and immaterial; and if all the evidence offered by the defendant had been admitted, it would not have authorized a ruling as to the first section of the ordinance different from that actually rendered by the court.

4. The city demurred generally, and presented to the court, among other things, the proposition that a court of equity has no jurisdiction to interfere in criminal matters either to enjoin the commission of a crime or its prosecution. The court ruled adversely to the defendant upon this contention, and the ruling was authorized under the contentions as shown by the pleadings. In the case of *Morrow* v. *Atlanta,* 162 *Ga.* 228 (133 S. E. 345), it is said by Mr. Chief Justice Russell: "The defendant insists that the ruling of the court was correct, because equity has no jurisdiction to enjoin a quasi-criminal prosecution, relying upon the ruling announced in *Jones* v. *Carlton,* [146 *Ga.* 1 (90 S. E. 278)], and cases cited. As pointed out in *Brown* v. *Thomasville,* 156 *Ga.* 260 (118 S. E. 854), while it is true that as a general rule equity will not restrain by injunction a threatened prosecution for a violation of a municipal ordinance, there is a well-recognized exception to this rule. The *Jones* case, supra, was controlled by the general rule, and is a type of a large number of cases, such as *Eisfeldt* v. *Atlanta,* 148 *Ga.* 828 (98 S. E. 495), and others which might be cited, but it is a principle equally well settled that, where a prosecution for a violation of a municipal ordinance is threatened which will prevent the exercise of a business which in and of itself is perfectly lawful, equity will enjoin a criminal prosecution." See also the case of *Brown* v. *Thomasville,* supra. In the case of *Carey* v. *Atlanta,* supra, it was said: "While equity will not ordinarily enjoin a criminal prosecution (*Georgia Railway & Electric Co.* v. *Oakland City,* 129 *Ga.* 576, 59 S. E. 296), yet, where repeated prosecutions are threatened under a void municipal ordinance, and the effect of such prosecutions would tend to injure or destroy the property of the person so prosecuted, or deprive him

of the legitimate enjoyment of his property, equity will entertain a suit to inquire into the validity of the ordinance, and enjoin its enforcement. *Hasbrouck* v. *Bondurant,* 127 *Ga.* 220 (56 S. E. 241); *Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (83 S. E. 263)." We are of the opinion that the rulings made in those cases are applicable to the issues made in the pleadings in the instant case, and sustain the ruling of the court below.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*