1. Unless a statute or ordinance passed by a duly-constituted legislative authority is violative of the limitations placed on the police power by the constitution, or, as is more commonly stated, unless it is repugnant to the constitution, it is not invalid. Such legislative authority may not unreasonably invade private rights, so as to violate such rights as are granted by the constitution.
2. If a vocation or business, or the manner of exercising it, is injurious to the rights of others, or is inconsistent with the public welfare, it may be regulated or prohibited altogether by the State or its delegated authorities.
3. The power to regulate, however, does not imply the power to prohibit entirely, unless such business comes within a class which may be declared harmful. The regulation imposed upon an ordinarily harmless business or vocation must not be unreasonable or arbitrary.
4. The right to contract, the right to earn a living, is fundamental, natural, and inherent, and is one of the most sacred and valuable rights of a citizen, and may not be violated without due process of law.
5. The regulation of a lawful business is dependent upon some reasonable *Page 75 
necessity for the protection of public health, safety, morality, or other phase of the general welfare.
6. "The right to follow any of the common avocations of life is an inalienable right." A person engaged in soliciting sales of lawful commodities, whether books, brushes, socks, tea, or insurance, is engaged in a lawful occupation.
7. A municipality has no authority by ordinance to declare a useful and per se perfectly lawful business a nuisance.
8. Police regulations of a trade or business deny due process of law if they are unreasonable, arbitrary, and extravagant in their interference with the property and personal rights of citizens.
9. Agents, solicitors, and peddlers of lawful commodities do not become nuisances by making calls at private homes within reasonable hours, where there is no circumstance to indicate that they are unwelcome by the individual home owner. Such visitation does not become a public nuisance punishable by imprisonment by the "ipse dixit" of a municipality.
 DECIDED MARCH 12, 1940.
The plaintiff in error was convicted, in the recorder's court of the City of LaGrange, on a charge of violating the following ordinance of the city: "The practice of going in and upon private residences in the City of LaGrange, Georgia, by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, and merchandise, and/or for the purpose of disposing of, and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such." The plaintiff in error, by demurrer to the charge, contended that said ordinance prohibited the circulation of the printed page at the homes of the people of LaGrange when the same is not given away free, thus curtailing the freedom of the press and the free and uninterrupted distribution or circulation of the printed page, contrary to the due-process clause of the fourteenth amendment to the constitution of the United States, and contrary to the first amendment thereto, and contrary to article 1, section 1, paragraph 3, of the constitution of the State of Georgia (Code, § 2-103), and that the ordinance is invalid under the due-process clause of the fourteenth amendment to the constitution *Page 76 
of the United States (Code, § 1-815), and in that it unduly and unreasonably restricts or absolutely prohibits the carrying on of certain harmless occupations, and by declaring that to be a nuisance which in fact is not a nuisance, and is therefore unreasonable, and thus seeks to deprive the defendant of a valuable property right, and is also discriminatory and contravenes a common right. Exceptions are taken to the overruling of this demurrer.
This court is asked to declare the above ordinance unconstitutional, or unreasonable or arbitrary. In order to justify a court in pronouncing a legislative act unconstitutional or a provision of a State constitution to be in contravention of the constitution of the United States, the case must be so clear as to be free from all doubt. 11 Am. Jur. 719, § 92. This same rule of construction ordinarily is applied by this court in passing on the validity of ordinances of a municipality the charter of which gives to it the right to make or pass such ordinances. However, "Municipal ordinances must be reasonable. The limitations of the power of a city council in this regard are not to be measured by the more extensive powers of the State legislature." Mayor c. of Savannah v. Cooper, 131 Ga. 670,676 (63 S.E. 138). "Ordinances can not be oppressive or unreasonable, nor can they unfairly discriminate in favor of one citizen, or of one class, against another." Toney v. Macon,119 Ga. 83, 87 (46 S.E. 80); City of Acworth v. Western Atlantic Railroad Co., 159 Ga. 610 (2) (126 S.E. 454). In approaching such a question, or in determining such a question, it should be borne in mind that there is a presumption in favor of the constitutionality of a legislative enactment. In Cooper
v. Rollins, 152 Ga. 588 (110 S.E. 726, 20 A.L.R. 1105), it was said: "This court will not declare an act of the legislature unconstitutional, unless the conflict between the act and the constitution is clear and palpable." An ordinance, however, may be declared invalid because unreasonable without declaring it unconstitutional. Richardson v. Coker, 188 Ga. 170
(3 S.E.2d, 636); Chaires v. Atlanta, 164 Ga. 755 (139 S.E. 559, 55 A.L.R. 230); City of Acworth v. Western AtlanticRailroad Co., supra; Mayor c. of Savannah v. Cooper, supra. Such an ordinance as this one is undoubtedly an attempt by the municipality to exercise the police power given it by its charter. It contravenes no provision of the constitution *Page 77 
with respect to freedom of speech. Unless this police power is restricted by the definite provisions of the constitution of the United States or the constitution of the State of Georgia, courts are powerless to declare invalid ordinances passed under such police power.
The police power is an attribute of sovereignty, and a necessary characteristic of every civilized government. It is inherent in the State of Georgia, and in municipal corporations where there have been express grants by the State through their charters. It is an inherent power of government, because the existence of government, as well as the social order, security, life, and health of the individual citizen, depend upon it. In American government the police power is a grant from the people to their governmental agents. This is recognized by the constitution of Georgia, article 1, section 1, paragraph 1 (Code, § 2-101), which declares: "All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." This police power may be said to be the bedrock of government; all other governmental powers are ancillary and corollary to it. Blackstone defines it as "The due regulation and domestic order of the Kingdom, whereby the individuals of the State, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations." Sweet v. Rechel, 159 U.S. 380, 399
(16 Sup. Ct. 43, 40 L. ed. 188). It will be borne in mind that the Congress or legislature is but the authorized agent of the whole people, and that the constitution, whether State or Federal, is in respect to laws a limitation on the powers which are otherwise inherent in the people or their duly-constituted representatives. Therefore unless a statute or ordinance passed by a duly-constituted legislative authority is violative of the limitations placed on the police power by the constitution, or, as is more commonly stated, is repugnant to the constitution, it is not invalid.
When a law is attacked on the ground that it deprives a citizen of liberty or property without due process of law, we should call to mind that the underlying principle of laws passed under the inherent police power of the government is that it is the duty of each citizen to use his property and exercise his rights and privileges *Page 78 
with due regard to the personal and property rights of others. The old saying, "my right ends where your nose begins," though trite, is applicable. The safety of the people is the supreme law of the land. Justice Holmes, quoting approvingly from Camfieldv. United States, 167 U.S. 518 (17 Sup. Ct. 864,42 L. ed. 260), said, "In a general way . . the police power extends to all the great public needs;" and, further, "It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." Noble State Bankv. Haskell, 219 U.S. 104, 111 (31 Sup. Ct. 186, 55 L. ed. 112, 32 L.R.A. (N.S.) 1062, Ann. Cas. 1912A, 487). However, the fact that it may be exercised for the promotion of the general welfare does not mean that it is unlimited. There is no exact definition of its limitations, for the reason that the provisions of the constitution itself which limit its application are themselves necessarily statements of general principles the application of which is, and must be, left to the determination of the courts. The fourteenth amendment does not curtail, restrain, destroy, or take from the States the right duly and properly to exercise the police power. The law passed by reason of such inherent powers of government must not unreasonably invade the rights guaranteed by the constitution and thus become repugnant to it. The question then becomes, in the present case, whether the exercise of the police power by the City of LaGrange, given to it by its charter, was an invasion of the due-process clause of the State or the Federal constitution.
If a vocation or business, or the manner of exercising it, is injurious to the rights of others, or inconsistent with the public welfare, it may be regulated or prohibited altogether by the State or its delegated authorities. In Clein v. Atlanta,164 Ga. 529, 535 (139 S.E. 46, 53 A.L.R. 933), the Supreme Court said: "Unless the regulations are so utterly unreasonable and extravagant that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not exceed the limits of the police power of the city to pass." The power to regulate, however, does not imply the power to prohibit entirely, unless such business comes within a class that may be declared harmful. The regulations imposed on an ordinarily harmless business or vocation must not be *Page 79 
unreasonable or arbitrary. The right to earn a living by pursuing an ordinary occupation is protected by the constitution. This right is fundamental, natural, inherent, and is one of the most sacred and valuable rights of a citizen. His business or calling is properly within the meaning of the due-process clause of the constitution. In Cosgrove v. Augusta, 103 Ga. 835, 836
(31 S.E. 445, 42 L.R.A. 711, 68 Am. St. R. 149), it was said: "It is elementary, that a municipal corporation in the exercise of police power conferred by the general welfare clause of its charter, for the purpose of promoting the comfort, health, convenience, good order, and safety of its citizens, may pass reasonable ordinances for the regulation of lawful trades and occupations within its limits. But it is not authorized under such power to make it unlawful to carry on a lawful trade or business in a lawful manner." The right of an individual to pursue his business or vocation of peddling or soliciting, unless the thing sold or the manner of sale infringes on the public welfare, is a right guaranteed by the constitution. "The right of reasonable regulation is a modification of the sweeping generalization that every person has a right to pursue any lawful calling." 11 Am. Jur. 1150, § 337. See Jones v. Atlanta,51 Ga. App. 218, 220 (179 S.E. 922), and cit. Embraced within this right to pursue a lawful calling is the right to contract. See Mack v. Westbrook, 148 Ga. 690, 693 (98 S.E. 339);Watson v. Thomson, 116 Ga. 546 (42 S.E. 747, 59 L.R.A. 602, 94 Am. St. R. 137); Lloyd v. Richardson, 158 Ga. 633,634 (124 S.E. 37). "Reasonable regulation," however, is a term that is susceptible of many definitions, and may depend entirely on the viewpoint of the person defining it. No exact definition can be given. It must, as the word implies, be based on reason, rather than, or distinct from, something that is wholly arbitrary or capricious. A regulation of a lawful business, without reason or necessity, can not be enforced, because it necessarily becomes unreasonable and capricious. As we have said, the power to regulate such a business is not the equivalent of the power to destroy. "The regulation of a lawful business, however, is dependent upon some reasonable necessity for the protection of the public health, safety, morality, or other phase of the general welfare; and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one *Page 80 
or more of these general objects of the police power, it is repugnant to constitutional guaranties and void." Bramley v.State, 187 Ga. 826, 835 (2 S.E.2d 647).
It may be well to state that this identical ordinance has been before the Supreme Court of this State. In Clay v. Mathews,185 Ga. 279 (194 S.E. 172), Clay had been convicted of its violation, and after sentence and detention by the chief of police he applied for a writ of habeas corpus. In his petition he raised the question now before us. The Supreme Court was evenly divided, the judgment was affirmed by operation of law. We find a like diversity of opinion in foreign jurisdictions. In Town of Green River v. Fuller Brush Co., 65 Fed, 112 (9) (88 A.L.R. 177), it was held that an "ordinance declaring uninvited visitation of private residences by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors, a nuisance," was appropriate exercise of police power, and it was said: "We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of doorbells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes." This decision was followed in Town of Green River v. Bunger, 50 Wyo. 52
(58 P.2d, 456), where it was said: "The practice which the ordinance declares to be a nuisance might better be described as a succession of trespasses causing disturbance." See City of Shreveport v. Cunningham, 190 La. 481 (182 So. 649).
On the other hand the court in our sister State of South Carolina, in passing on an ordinance framed in language identical with that of the one in the present case, held that it was unreasonable and void. City of Orangeburg v. Farmer, 181 S.C. 143,150 (186 S.E. 783). After quoting South Carolina decisions, which follow the rule laid down in this State as to the reasonableness of ordinances, the court said: "We shall therefore attempt to apply the test of reasonableness to the ordinance in question. The ordinance declares that the mere soliciting of the sale of merchandise in and upon private residences is a nuisance, and levies a penalty upon such facts shown. The penalty is not based upon the conduct of the salesman, nor is the same based upon any valid shown reason of protecting the public health, nor is any other fact required save and except an act which in itself is legitimate." The court further said that "the ordinance is unreasonable, unconstitutional *Page 81 
on this ground, and void." In Jewel Tea Co. v. Bel Air,172 Md. 536, 540 (192 A. 417), the court held that an ordinance prohibiting the solicitation of customers by ringing doorbells or otherwise is void, and said: "We fail to see how the solicitation or conduct of a legitimate business or trade can be resolved into a health, safety, or general-welfare regulation by suppression by a town ordinance." In Real Silk Hosiery Mills v. Richmond, 298 Fed. 126, it was said: "Application of city ordinance, imposing penalties on peddlers and solicitors calling at dwellings bearing the sign `No Peddlers' to non-resident solicitors for orders to be filled through interstate commerce, held an unwarranted interference with interstate commerce, and deprivation of liberty of contract and of property without due process of law." Also, that "a householder's ban upon peddlers is none to solicitors," and that "the principles involved need no restatement, and the cases, Texas etc. Co. v. City, [264 U.S. 150],44 Sup. Ct. 242, 68 L. ed. 611, 34 A.L.R. 907, being the latest, need no review." In White v. Culpepper, 172 Va. 630 (1 S.E.2d 269), it was held that such an ordinance as the one here considered was invalid. It was said that the city could not declare acts to be nuisances unless they affected the public generally. In the opinion the Wyoming decisions holding that the ordinances were valid were discussed; and those cited in this opinion were cited and followed, together with Prior v. White, 132 Fla. 1
(180 So. 347, 116 A.L.R. 1176). In the Prior case it was said that unless the householder manifests, externally in some way, his wish to remain unmolested by the visit of solicitors, it would seem that the solicitor may take custom and usage as implying consent to call where such custom and usage prevail. 31 Michigan Law Review, 543. "Invitation may be implied from custom, usage, or conduct." Lawrence v. Kaul Lumber Co., 171 Ala. 300
(55 So. 111). "It has been held that a license may be implied to enter the house of another, at usual and reasonable hours, and in a customary manner for any of the common purposes of life." Priorv. White, supra; Lakin v. Ames, 10 Cush. (Mass.) 198. See Restatement of the Law, Torts, § 167; City of McAlester v.
Grand Union Tea Co. (Okla.), 98 P.2d 924.
We do not mean to say that the individual is not entitled to the right of privacy, and that where he so desires he can not himself prevent a visitation by such solicitors; for to persist after notice *Page 82 
would be a trespass. Nor do we mean to hold that in such cases a municipality could not, by ordinance, aid in the prevention of such a trespass. But we do think that the unlimited imposition of a penalty on an uninvited solicitor who is carrying on a lawful and legitimate business in the usual way, manner, and time is an unreasonable and an arbitrary infringement of his rights.
Such an ordinance as this was upheld in City of Shreveportv. Cunningham, 190 La. 481 (182 So. 649), where it was stated that "unsuspecting housewives" might be imposed on and defrauded by strange solicitors, and that the ordinance was a protection to the people against "such fraud, deceit, cheating, and imposition." We think that a person engaged in the business of soliciting sales, whether of commodities, books, or insurance, is engaged in a lawful occupation. It was said in Watson v.Thomson, supra, that "the right to follow any of the common avocations of life is an inalienable right." The penalty provided by this ordinance is not based on the conduct of the solicitor or person entering, nor is it limited to the nighttime or other time. We can see why an ordinance preventing such solicitation after dark, or within certain limited hours, might have as a basis the prevention of criminals using this device to determine whether the occupant was at home, in order to commit a larceny. The ordinance makes no requirement as to a license to be obtained after production of evidence of good character, or to any other safeguard for the protection of public safety, health, or morals, but in effect prohibits and makes penal the going on the premises, irrespectively of character, respectability, or the fact that the householder might in fact desire the presence of such person though no invitation or request had been previously issued.
In Meyer v. Nebraska, 262 U.S. 390, 399 (43 Sup. Ct. 625,67 L. ed. 1042, 29 A.L.R. 1446), the court, on observing with reference to a State statute that "the problem for our determination is whether the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff in error by the fourteenth amendment," providing that "no State shall . . deprive any person of life, liberty, or property, without due process of law," used the following language which we think applicable in construing the ordinance now under consideration: "While this court has not attempted to define with exactness the liberty thus guaranteed, *Page 83 
the term has received much consideration, and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." While such solicitor may not be an invitee on the premises, we think usage and custom would constitute him at least a licensee rather than a trespasser where the householder had taken no steps to indicate that such a visit would be objectionable and would be considered as a trespass. As was said in Jones v. Asa G. Candler Inc.,22 Ga. App. 717, 720 (97 S.E. 112), "If the building is open, and there is nothing to indicate that strangers are not wanted, he impliedly permits and licenses persons to come there for their own convenience, or to gratify their curiosity." "A licensee is a person who is neither a passenger, servant, nor trespasser, and not standing in any contractual relation with the owner of the premises, and is permitted to come upon the premises for his own interest, convenience or gratification." 29 Cyc. 451 (b). A solicitor or peddler, where the householder has done nothing to indicate that he must not come on the premises, is at most a licensee and not a trespasser.
An entry by a trespasser, as opposed to a licensee, implies an unwarranted or offensive intrusion on the premises. A license, with reference to a licensee, at least implies a permission to enter. Where the owner or occupant has indicated his unwillingness to have persons enter his premises we can readily see that such entry after such notice would constitute a trespass, and therefore that it might be deemed a nuisance. Where the law, in the absence of such notice, determines the status of the entry of such person on the premises as that of a licensee, it carries an implied permission. To arbitrarily declare that such act of a licensee is a nuisance is without the authority of the municipality. Police regulations of a trade or business deny due process of law if they are unreasonable, arbitrary, and extravagant in their interference with the property or personal rights of citizens. This ordinance arbitrarily declares, without any limitation, that it is a nuisance for a solicitor to go to *Page 84 
a private residence without first having been invited to enter on the premises. The Code, § 72-101, declares: "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." In City of Acworth v. Western Atlantic Railroad Co., 159 Ga. 610 (5) (126 S.E. 454), it was said: "Only things which are nuisances by the common law or by statute or are nuisances per se can be summarily suppressed."
The decisions establishing these principles in this and other jurisdictions are numberless. In applying these principles to the ordinance in the present case we think it only necessary to say that it is an unreasonable interference with a property right, and has no reasonable or needed grounds for its enforcement. The householder can fully protect himself, or the municipality may aid in such protection when necessary. To arbitrarily declare, without qualification, that every solicitor who goes to a private home to try to conduct an otherwise perfectly legal business is a nuisance and subject to fine or imprisonment is an unreasonable interference with his normal, legal rights, without due process of law.
Judgment reversed. Broyles, C. J., concurs.